JOHN C. WRIGHT, ET AL., ETC.

V.

JOANN WEBB

Record No. 841196

November 25, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Whiting, JJ., and Gordon, Retired Justice.

*James C. Howell (Palmer S. Rutherford, Jr.; Willcox & Savage, P.C.*, on briefs), for appellants.
*Jeffrey A. Breit (C. Arthur Rutter, Jr.; John H. Klein; William D. Breit; Breit, Rutter & Montagna*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In this negligence case, we consider under what circumstances commercial property owners are liable for injuries to a business invitee caused by the criminal assault of a third party.

On October 23, 1980, Joann Webb (Webb) was criminally assaulted in the parking lot of a motel owned by John C. Wright and John R. Wright, partners, trading as Quality Inn-Lake Wright (the Wrights). Webb, claiming she was a business invitee, sought damages for personal injuries arising out of the Wrights' alleged negligence in failing to provide adequate exterior lighting on the parking lot, fencing, closed circuit television, perimeter patrols, and speed bumps to protect business invitees "against foreseeable criminal attack."

■ The trial court entered judgment on a jury's verdict for Webb. In conformity with well-established appellate principles, we consider the facts in the light most favorable to Webb, the prevailing party in the trial court.

The Wrights provided parking spaces on their property not only for the motel guests but also for patrons of an adjacent business owned by another party, known as the Lake Wright Dinner Theatre (the dinner theatre). At dusk on October 23, 1980, Webb, intending to attend a function at the dinner theatre, parked her car in the Wrights' parking lot. Webb entered the motel and asked for directions to the dinner theatre. After getting directions, Webb returned to her car to drive over to the theatre. It was dark by this time.

Just as Webb prepared to move the car, a man, later identified as Thomas Moore (Moore), opened the car door on the driver's side, put his hand over Webb's mouth and told Webb he "would blow [her] brains out" if she screamed. When Moore entered the car and started the engine, Webb tried to escape through the passenger's door. Webb was partially out of the car when she started to scream. Moore grabbed Webb by the hair and pulled her back into the car. Webb continued screaming during most of the ensuing five-minute struggle. Toward the end of the struggle, Moore bit off a portion of Webb's nose and left the car. Three male guests of the motel, who had heard Webb screaming, arrived shortly thereafter and offered assistance. Moore reappeared, and Webb identified him as her assailant. Moore was later arrested and convicted of the assault.

A Norfolk police officer testified concerning police reports of prior larcenies, which had occurred on an average of once or twice

a month in either the motel rooms or in automobiles parked in the lot. Prior to this assault, the Wrights' motel manager knew about some of the prior larcenies which occurred in the parking lot, a physical assault upon a female guest in a motel room in November of 1979, and a double murder in the parking lot of an adjacent property, operated by the City of Norfolk as a golf course, in April of 1977.

There was evidence from which the jury could conclude that the parking lot was dimly lit. A security expert testified about other available precautions — such as fencing, closed circuit television, a patrol of the premises, and a speed bump — which might have deterred criminal activity in the parking lot.

We will assume, without deciding, that Webb was the Wrights' business invitee. Thus, the Wrights owed Webb the duty of ordinary care to maintain their parking lot in a reasonably safe condition. *See Tate* v. *Rice*, 227 Va. 341, 345, 315 S.E.2d 385, 388 (1984).

Ordinarily, the owner or possessor of land is under no duty to protect invitees from assaults by third parties while the invitee is upon the premises. Restatement (Second) of Torts § 314A (1965) recognizes exceptions to the rule of non-liability for the assaults of a third party where there is a special relationship between a possessor of land and his invitee giving rise to a duty to protect the invitee from such assaults. We alluded to this Restatement rule in both *Klingbeil Management Group Co.* v. *Vito*, 233 Va. 445, 447, 357 S.E.2d 200, 201 (1987) and *Gulf Reston, Inc.* v. *Rogers*, 215 Va. 155, 158, 207 S.E.2d 841, 844 (1974), but made it plain in *Gulf Reston* that this was only a reference to the Restatement rule. Our statement in *Klingbeil* was simply a comment upon the reference in *Gulf Reston.*

Webb urges us to adopt the Restatement rule by creating a duty of care requiring a business invitor to take positive action to protect his business invitee from assault by third parties while the invitee is on the business premises. We decline to do so for the reasons which follow.

A business invitor owes the same duty of reasonable care to his invitee that a landlord owes to his tenant. In both *Klingbeil* and *Gulf Reston*, we rejected the contention that the landlord-tenant relation imposed a duty upon the landlord to "act as policeman," *Klingbeil*, 233 Va. at 447, 357 S.E.2d at 201, or "protect

his tenant from a criminal act by a third person," *Gulf Reston*, 215 Va. at 157, 207 S.E.2d at 844.

■ As we said in *Gulf Reston*, in ordinary circumstances, acts of assaultive criminal behavior cannot reasonably be foreseen. Indeed, in the earlier case of *Connell* v. *Chesapeake, &c. R. Co.*, 93 Va. 44, 58, 24 S.E. 467, 469 (1896), we distinguished the duty to anticipate crimes against property from any duty to foresee assaultive criminal behavior. In *Connell*, an unknown party murdered a passenger who was asleep in his berth, and the railroad was charged with negligence in failing to protect him. Distinguishing foreign cases dealing with the liability of railroads for negligence in failing to protect a passenger's property, we said murder was so rare a crime that, even with its duty to exercise a high degree of care to protect its passengers, a common carrier should not be required to anticipate homicide in the absence of notice of the threatened danger. *Id.*

■ " '[I]n determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account.' " *Gulf Reston*, 215 Va. at 159, 207 S.E.2d at 845, *quoting Trice* v. *Chicago Housing Authority*, 14 Ill. App. 3d 97, 100, 302 N.E.2d 207, 209 (1973). In ordinary circumstances, it would be difficult to anticipate when, where, and how a criminal might attack a business invitee. Experience demonstrates that the most effective deterrent to criminal acts of violence is the posting of a security force in the area of potential assaults. In most cases, that cost would be prohibitive. Where invitor and invitee are both innocent victims of assaultive criminals, it is unfair to place that burden on the invitor.

Webb argues that the knowledge of frequent previous larcenies in the parking lot, some of which involved forcible entry, combined with knowledge of other criminal activity, should have alerted the Wrights to the likelihood of this assault. Courts in other jurisdictions have expressed conflicting views on this subject.[1] We agree with those that hold that knowledge of prior

---

[1] *Cook* v. *Safeway Stores, Inc.*, 354 A.2d 507 (D.C. 1976); *Relyea* v. *State*, 385 So. 2d 1378 (Fla. Dist. Ct. App. 1980); *Taylor* v. *Hocker*, 101 Ill. App. 3d 639, 428 N.E.2d 662 (1981); *Gill* v. *Chicago Park District*, 85 Ill. App. 3d 903, 407 N.E.2d 671 (1980); *Nappier* v. *Kincade*, 666 S.W.2d 858 (Mo. Ct. App. 1984); *Uihlein* v. *Albertson's, Inc.*, 282 Or. 631, 580 P.2d 1014 (1978); *Cornpropst* v. *Sloan*, 528 S.W.2d 188 (Tenn. 1975); and *Castillo* v. *Sears, Roebuck & Co.*, 663 S.W.2d 60 (Tex. Ct. App. 1983), hold that knowl-

crimes against property does not create a duty upon a business invitor to anticipate and guard against assaults upon its invitees, offenses involving a substantially different kind of criminal behavior.

Webb argues that even if we limit the special circumstances to prior crimes of violence against persons, her case meets the criteria of special circumstances requiring reasonable action by the Wrights to protect their invitees. In support of this argument, Webb cites evidence of one assault on a guest in a motel room almost a year before Webb was assaulted, as well as a double murder on an immediately adjoining property three and a half years before her assault.

Webb cites the common carrier case of *Hines* v. *Garrett*, 131 Va. 125, 108 S.E. 690 (1921), as a precedent for liability in this case. In *Hines*, a railroad train stopped almost a mile beyond the passenger station and the conductor discharged a young female passenger in an area known to be inhabited by hoboes and tramps. Two men raped the young woman shortly after she left the train. 131 Va. at 130, 108 S.E. at 691. Recognizing the high degree of care a common carrier owes its passengers and, therefore, a carrier's duty to protect passengers from criminal acts of third persons which are reasonably foreseeable, we held that the carrier could be liable for its affirmative act of negligence in ejecting the passenger at a dangerous place.[2] 131 Va. at 137-38, 108 S.E.2d at 694. *Hines* is inapplicable, however, because a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier.

Most of the earlier cases in Virginia dealing with the liability of a business invitor for the criminal acts of third parties

edge of non-assaultive crimes does not create a duty to anticipate and guard against future assaultive crimes. *Isaacs* v. *Huntington Memorial Hospital*, 38 Cal. 3d 112, 695 P.2d 653 (1985); *Virginia D.* v. *Madesco Investment Corp.*, 648 S.W.2d 881 (Mo. banc 1983); *Butler* v. *Acme Markets, Inc.*, 177 N.J. Super. 279, 426 A.2d 521 (1981), *aff'd*, 89 N.J. 270, 445 A.2d 1141 (1982); *Atamian* v. *Supermarkets General Corp.*, 146 N.J. Super. 149, 369 A.2d 38 (1976); and *Foster* v. *Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36 (1981), hold to the contrary.

[2] In *Hines*, we reversed a jury's finding in favor of the plaintiff, and remanded the case because the jury was not instructed to consider whether the passenger left the train voluntarily or the conductor coerced her to do so. 131 Va. at 141, 108 S.E. at 695.

involved common carriers.[3] *Va. Ry. & Power Co.* v. *McDemmick*, 117 Va. 862, 86 S.E. 744 (1915); *Norfolk & Western Ry.* v. *Birchfield*, 105 Va. 809, 54 S.E. 879 (1906); *Connell*, 93 Va. 44, 24 S.E. 467. In both *Birchfield* and *McDemmick*, we held that common carriers could be held liable for negligence in failing to intervene to protect a passenger from another passenger's assault *if* an agent of the carrier was close enough to intervene. In *McDemmick*, we reversed a lower court that had refused an instruction offered by the carrier, which indicated the carrier should be exonerated if the jury found that the assault was "unexpected and inflicted at a time when the [carrier was] unable to protect [the plaintiff]." 117 Va. at 867, 86 S.E. at 746. Implicit in all three of these common carrier cases is the element of notice of a specific danger just prior to the assault. In contrast, Webb relies upon previous criminal activity. We will not impose liability for negligence based solely upon such a background.

We hold that a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee. In our opinion, two prior isolated acts of violence in this case would not lead a reasonable person in charge of a dinner theatre parking lot to conclude that there was an imminent danger of criminal assault, which required the invitor to take action to protect Webb.

Accordingly, we will reverse the judgment of the trial court and enter final judgment for the defendant.

*Reversed and final judgment.*

---

[3] An exception was *Whitfield* v. *Cox*, 189 Va. 219, 52 S.E.2d 72 (1949). In *Whitfield*, we declined to hold the sponsor of a wrestling match liable for negligence in failing to prevent a patron from being struck in the face by a whiskey bottle another patron had thrown. In setting aside a jury verdict the trial court had approved, we said:

> It was not required of the defendant that he search his patrons for objects that might be used to injure plaintiff or other patrons, and the court so instructed the jury. Short of doing that, or having enough employees to watch each patron and prevent one from injuring another, it would seem that the measures taken by the defendant to protect his patrons were all that could reasonably be required.

*Id.* at 224, 52 S.E.2d at 74.

POFF, J., concurring.

I concur in the result the majority has reached but cannot subscribe to the negligence standard which I understand the Court has adopted. I would endorse the logic underlying the Restatement (Second) of Torts § 344 (1965). This rule has been adopted in nearly every jurisdiction that has considered it. *See id.* app. at 523-43 (1986).

A business invitor is not an insurer of the safety of his invitees, and, ordinarily, he has no duty to protect them from criminal assaults by third persons. If, however, the character of his business or his past experience in the conduct of his business is such that a reasonable person should anticipate criminal assaults committed on the premises by third persons, an invitor may have a duty to warn his invitees or to take other precautionary measures to protect them from bodily harm. *Id.* comment f (1965). A number of courts have found that such a duty may exist if an invitor knows or should know of a history of prior criminal assaults committed on his business premises that poses a reasonable likelihood that other invitees may be the victim of criminal assaults. *See, e.g., Stevens* v. *Jefferson*, 436 So. 2d 33, 34-35 (Fla. 1983); *Early* v. *N.L.V. Casino Corp.*, 100 Nev. 200, 203-04, 678 P.2d 683, 684-85 (1984); *Butler* v. *Acme Markets, Inc.*, 89 N.J. 270, 277-81, 445 A.2d 1141, 1145-46 (1982); *Nallan* v. *Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 519-20, 407 N.E.2d 451, 458, 429 N.Y.S.2d 606, 613 (1980); *Murphy* v. *Penn Fruit Co.*, 274 Pa. Super. 427, 433-34, 418 A.2d 480, 483-84 (1980). Although I agree that the prior criminal assaults reflected in the evidence in this case would not raise such a duty, I would not categorically foreclose the possibility of a duty stemming from a history of prior assaults.

STEPHENSON, J., joins in concurring opinion.