## CIRCUIT COURT OF ARLINGTON COUNTY

Wooldridge

v.

Echelon Service Co.
and Dynatrend, Inc.

September 13, 1988

Case No. (Law) 86-320

By JUDGE WILLIAM L. WINSTON

This case is before the court on the demurrers of the defendants Echelon Service Company (hereinafter Echelon) and Dynatrend, Incorporated (hereinafter Dynatrend) to those counts in the First Amended Motion for Judgment alleging negligence and breach of contract against these defendants.

### Counts I and III: Negligence

Count I alleges that defendant Echelon was negligent in performing its duties and that Linda Billings died as a result of its negligence. Defendant Echelon demurred, stating that plaintiff failed to state a cause of action in that the Contract Guard Information Manual (Exhibit C) and The Guard Post Assignment Record (Exhibit D) are private rules and guidelines and are inadmissible to establish a duty owed to the plaintiff's decedent.
The Contract Guard Information Manual and the Post Orders for Crystal Mall 2 are incorporated into the Contract itself:

### 5. *Services Required*
#### A. *General*

The contractor shall provide trained employees at all times to perform the services as prescribed by (1) the contract, (2) Guard Post Assignment Record (GSA Form 2580) and (3) Officer's Duty Book. In the event of an inconsistency the contract takes precedence over other documents (GSA Specifications I-C-2, p. 49).

Because both the information manual and the post orders are, in fact, part of the contract between the United States Government and Echelon, they do not constitute private rules and guidelines and are admissible to establish a duty owed.

The general rule is that an individual "owes no duty to control the conduct of a third person in order to prevent harm to another unless a 'special relationship' exists giving rise to a right of protection. Examples of such a 'special relationship' include common carrier-passenger, business proprietor-invitee, and innkeeper-guest." *Klingbeil Management Group Company v. Vito*, 223 Va. 445 (1987), Restatement of Torts 2d, Section 314 (1965). In Virginia, however, only the common carrier-passenger relationship has been recognized as imposing a duty on the defendant to protect a victim from criminal acts of third persons which could be reasonably foreseen. *See Wright v. Webb*, 234 Va. 527 (1987); *Hines v. Garrett*, 131 Va. 125 (1921). A landlord does not have a duty to protect his tenants from criminal acts by third parties. *Gulf Reston, Inc. v. Rogers*, 215 Va. 155 (1974); *see also Deem v. Charles E. Smith Management*, 799 F.2d 944 (4th Cir. 1986). A business-invitee is owed a duty only by one who is an owner or occupier of the premises. *Wright, supra*; *Crocker v. W.T.A.R. Radio Corp.*, 194 Va. 572 (1953).

In the present case, there is no "special relationship" which would impose liability on the defendants. Ms. Billings was neither a passenger nor a business invitee or guest. For these reasons, there was no common-law duty owed by defendants Echelon and Dynatrend to protect her from criminal intruders. The demurrers as to Counts I and III are there-

fore sustained respectively to both defendants Echelon and Dynatrend.

### Counts II and IV: Contract

Did defendants Echelon and Dynatrend breach their contracts by failing to perform the duties described therein?

The plaintiff asserts that Linda Billings, an employee of the United States Government working at Crystal Mall 2, was an intended beneficiary of the contract between defendant Echelon and the United States Government (pages 000117, 000054, 000191, 000259, 000264) as well as the contract between defendant Dynatrend and the United States Government (pages 000403, 000457).

Defendant Echelon's counter to this is that plaintiffs' decedent has no cause of action under Count II because she was merely an "incidental" beneficiary to the contract between the United States and Echelon.

The contract is incorporated by reference into the plaintiff's pleading, and it was agreed by all at oral argument that it could be considered by the Court in ruling on the demurrers.

The right of a third-party beneficiary to assert a claim arising from a contract is conferred by statute which permits one not a party to a contract to sue upon a contract which is made in whole or in part for his benefit. Va. Code, Section 55-22.

Virginia law draws a distinction between third-party "intended" beneficiaries and third-party "incidental" beneficiaries. A clear and definite intent to benefit the plaintiff is required to confer standing to bring a third-party beneficiary action. A contract which merely *incidentally* benefits plaintiff is insufficient. *See Obenshain v. Halliday*, 504 F. Supp. 946 (E.D. Va. 1980); *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987); *Kelly Health Care, Inc. v. Prudential Insurance Company of America*, 226 Va. 376 (1983). Specifically:

> An incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue

on that contract whereas an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a Court will permit him to sue on that contract. *Radosevic*, at 1038.

It is Defendant Echelon's position that the *Obenshain/Radosevic* incidental beneficiary analysis "applies to the facts of the instant case where the plaintiff is simply one of the EPA's unspecified and undefined employees in the subject building" (Memorandum of Points and Authorities in Support of Defendant Echelon Service Company's Demurrer, p. 12).

In the case at hand, plaintiffs allege that defendant Echelon breached its third-party beneficiary contract wherein it promised the U. S. Government it would provide guard services at, among other places, Crystal Mall 2, 1921 Jefferson Davis Highway for the well-being and safety of those employed by the EPA and the protection of property.

Plaintiff's position is that Linda M. Billings, an employee of the EPA, met her death as a result of Echelon's failure to provide proper security services as promised in the contract. She died after receiving multiple stab wounds at the hands of an intruder in her eleventh floor office.

Defendant Echelon, in its demurrer, cites a long line of cases in support of its position that incidental beneficiaries are not entitled to sue under a contract. *See Obenshain v. Halliday*, 504 F. Supp. 946 (E.D. Va. 1980) (airplane crash victim was in a class too broad for liability to be imposed); *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987) (full-time college student was seriously injured when a piece of roofing blew off a college building and struck her. Court held she was not an intended beneficiary of the housekeeping contract); *Kelly Health Care, Inc. v. Prudential Insurance Company of America*, *supra* (health care provider claimed it was an intended beneficiary to the insurance contract between its patient and the patient's insurance company. Court held to the contrary).

Defendant Echelon attempts to extend the theory present in this line of cases to this case. But the proper test is whether the third-party is integral to the con-

tract. In other words, does removal of the third-party from the contract render the contract meaningless or substantially alter its purpose.

One need only examine the Echelon contract to realize that protecting employees was one of its main purposes. Under "Typical Duties" the guard post assignments include the duty to "Discover and detain persons attempting to gain unauthorized access to the property" (# 10, page 000050), "obtaining professional assistance in accordance with procedures in the Officer's Duty Book in the event of injury or illness to Government employees or others while in the building or on the grounds" (# 12, page 000050) as well as the duty to "perform such other functions as may be necessary in the event of situations or occurrences such as civil disturbances, attempts to commit espionage, sabotage, *or other criminal acts adversely affecting the security and or safety of the Government, its employees*, property and general public *lawfully in the buildings or grounds under control of the Government*" (emphasis supplied).

It is plain to the Court that a major purpose for the contract's existence was to provide services that include protection of its on-site employees. The contract refers repeatedly to the words guard or guard agency. Indeed, the very definition of the word "guard" is "to keep from harm; watch over and protect; defend; shield" (Websters New World Dictionary of the American Language, Second College Edition 1974). The Contract Guard Information Manual points out the importance of guard duties. Significantly, it warns of the "heavy burden of responsibility" cautioning the armed guard to be "skilled in the use and care of all weapons and equipment and understand fully the legal situations and safety procedures governing their use." It further warns that *"only then can you protect the public from serious injury or death and avoid errors that might lead to civil and criminal liability."* (Chapter 5: "Using Firearms and Other Equipment," page 000209, emphasis supplied). Finally, the class to be protected only included members of the public when they were lawfully in the building (i.e. visitors), not any individual seeking access to the building. Thus this contract is not so broad as to fit within the *Obenshain/Radosevic* line of reasoning.

It is interesting to note the language the Court used in *not* imposing liability on the business invitor in *Wright, supra*:

> In ordinary circumstances, it would be difficult to anticipate when, where, and how a criminal might attack a business invitee. Experience demonstrates that the most effective deterrent to criminal acts of violence is the posting of a security force in the area of potential assaults. In most cases, that cost would be prohibitive . . .

The Court in *Wright* added that *Hines, supra*, was inapplicable "because a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier."

One could say that an on-site employee entrusts his or her safety to a guard certainly to the extent that a passenger does to a common-carrier. And while the language of this case does not hold that security forces will be liable for the criminal acts of third parties, its implication is that security companies are the most effective deterrent to criminal conduct available.

Aside from the very persuasive state of the law prior to this year, it appears that the Supreme Court of Virginia on June 10, 1988, has put the matter to rest in the case of *Richmond Medical Supply Co., Inc. v. Clifton*, 235 Va. 584, 4 VLR 3102 (1988). There the Supreme Court very carefully distinguished between those cases in which liability is sought to be imposed in tort as opposed to those sounding in contract. The court re-affirmed the long line of cases beginning with *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, where liability was denied in tort.

> In none of them had the defendant expressly assumed a duty, by contract, to take some specific action to protect the plaintiff from a danger within the contemplation of the parties at the time of contracting. *RMS*, 4 VLR 3102 at 3105.

The court then proceeded in *RMS* to reverse the trial

court which had ruled as a matter of law that the cause of action was barred by the reasoning of *Gulf Reston.*

In *RMS* the court was dealing with a theft of medical supplies allegedly resulting from breach of a lease provision. On the essential fact pattern, these is little to distinguish it from the case pleaded here.

For all of the foregoing reasons, Echelon's demurrer is overruled both as to the issue of standing as well as to that of the legal sufficiency of the First Amended Motion for Judgment to allege a cause of action.

### *Count IV*

We come next to Dynatrend's alleged breach of contract. We must again determine whether or not plaintiffs have standing as a third-party beneficiary to sue defendant Dynatrend. Plaintiffs allege that Dynatrend, like Echelon, breached its contract by failing to perform the duties and obligations outlined in the contract. They argue the decedent was a third-party beneficiary of the contract. Referring to Dynatrend's Technical Proposal prepared for the EPA, they point out Dynatrend's "duties":

> Both internal and external threats are identified, based on both local experience and observations at similar facilities. (For purposes of discussion, the term "threat" is used to refer to disgruntled employees, vandals, criminals, demonstrators, or any other individual or group which may be intent on interfering with the agency's business activity causing loss of government or private property, or inflicting harm on agency employees or visitors.)

Nowhere in this section is there any language which shows a "clear and definite" intent to benefit Linda Billings or any other EPA employee at Crystal Mall 2. The only language identified by plaintiffs as naming EPA employees at all is found on page 000457:

> The Dynatrend team is working closely, on a daily basis, with Guard Forces to protect EPA personnel, equipment, and proprietary informa-

tion. With EPA headquarters located in Waterside Mall in leased space, with adjacent large areas of public access and multiple security force jurisdictions, there is a pressing requirement for constant liaison and close coordination to ensure that EPA assets and personnel resources are ·properly protected. Dynatrend is doing this with demonstrated success.

As defendant Dynatrend points out, however, this language "is an assertion concerning Dynatrend's performance in the *past* (emphasis supplied) (*see* Memorandum and Points of Authority In Support of Defendant, Dynatrend's Demurrer to Plaintiffs' First Amended Motion for Judgment).

Plaintiffs have alleged that Dynatrend improperly performed its duties and obligations under the contract. While it is true that duties and responsibilities included "review and revise, as required, all guard force instructions, policies and procedures consistent with contractual requirements" (H. 15. 1.2 *Major Duties and Responsibilities*, p. 000341) that language alone is not enough to confer Linda Billings with third-party beneficiary status. With the exception of the above, plaintiffs point to no language which supports the argument that EPA personnel are "intended" third-party beneficiaries of this contract.

For these reasons, the Court finds that the Dynatrend contract falls within the *Obenshain/Radosevic* line of reasoning. That is, plaintiffs' decedent was only tenuously related to the contract between Dynatrend and the United States Government. The Court will therefore sustain Dynatrend's demurrer for the reasons stated.