Present:  All the Justices

JAMES P. BURNS, JR.,
T/A SOUTH NORFOLK AMOCO

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 941465                        June 9, 1995

TUWANNA E. JOHNSON


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Thomas S. Shadrick, Judge


     In this appeal, the sole question is whether an invitee
presented sufficient evidence to establish a duty upon the owner
of land to protect the invitee from the criminal act of a third
person committed while the invitee was upon the premises.  We
answer that question in the negative.

     Appellee Tuwanna E. Johnson filed a motion for judgment
against appellant James P. Burns, Jr., trading as South Norfolk
Amoco, seeking damages for negligently inflicted personal
injuries sustained when she was abducted from defendant's
premises and raped.  In a May 1994 trial, after the court
overruled defendant's several motions to strike the plaintiff's
evidence, a jury found for the plaintiff and assessed her damages
at $175,000.  The trial court entered judgment on the verdict
after overruling defendant's motion to set it aside.  We awarded
defendant this appeal.

     According to settled appellate principles, we shall recite
the facts in the light most favorable to the plaintiff.  In the
early morning hours of April 12, 1992, defendant's employee,
Denise Breaker, was on duty alone as the cashier at a self-
service gasoline station situated on property owned by defendant

in the city of Chesapeake.  The employee was working in a locked, glass-enclosed booth equipped with bullet-proof glass, two telephones, a silent alarm, and three television monitors. Cigarettes, candy, and similar items were dispensed through a window; there was no store accessible to the public.

Near 2:00 a.m. on the day in question, a man later identified as Nathaniel Bryant parked a vehicle at one of the gas pumps on the premises, walked to the window, and bought a pack of cigarettes.  Bryant, "a regular customer," was drunk and repeatedly asked to come "inside of the booth," saying to the employee, "I want to fuck you."  She refused and "requested him to leave quite a few times."

After Bryant had remained on the premises for ten to fifteen minutes, the plaintiff, a young woman, drove a vehicle onto the premises and parked at another gas pump.  The plaintiff came to the window and paid two dollars for gasoline.  According to the plaintiff, Bryant was standing at the window, and she heard the employee say to him, "Sir, you have to leave now.  Sir, you have to leave now."

The plaintiff returned to her vehicle to pump the fuel.  At this point, the employee left her position at the window, went to the rear of the booth because "she needed to do some inventory on her cigarettes or do something with the cigarettes," according to a statement the employee later gave to an investigating police officer.

As the plaintiff was pumping the gas, Bryant, a stranger to the plaintiff, asked if he could help.  She declined the offer and Bryant "walked away."  He immediately returned, "grabbed" her arm, and said he would shoot her if she screamed.  He then forced her into a field adjacent to defendant's premises and raped her.

In the meantime, the employee returned to the front of the booth.  She observed through the windows and monitors that "the man and the woman" were "both gone."  She saw, however, that the two vehicles remained at the gas pumps, but she "had no reason to feel" the plaintiff "was in any danger."  She testified that customers often left their cars at the pumps while they used telephones or soft-drink machines available on the premises.  The owner testified that he had "no problem" with cars remaining on his premises during nighttime because "[i]t helps business" for a car to be "sitting there."

A "few minutes" after the employee returned to the front of the booth, a young male friend of the plaintiff drove past the premises, recognized the plaintiff's parked vehicle, "pulled in the gas-station lot and started to look for her."  The friend called plaintiff's name and asked the employee if she had seen the plaintiff.  The employee responded, "She was just standing over there with a gentleman . . . a few minutes ago."  The employee said that "you better look around for her, because something is wrong."

The friend unsuccessfully searched the premises, including

"behind the booth," for the plaintiff.  He asked the employee "to call the police," she "looked up," and gave him "an okay."  The friend then drove away.

According to the plaintiff, the assailant sexually assaulted her in the field during a period of one and one-half hours.  During that period, she "heard somebody call out something," but was too frightened to respond.  Finally, the assailant left her and drove away from the station.  In a few minutes, she drove from the premises without speaking to defendant's employee.

The plaintiff contends that the trial court, in its rulings on the motions to strike and to set the verdict aside, correctly decided that a jury question was presented whether defendant's employee "breached her duty to [the plaintiff] when, with knowledge that a criminal assault was imminent, she failed to protect or warn [the plaintiff]."  We disagree.

At the threshold, the plaintiff must establish a duty upon the defendant.  The law is settled on this subject.  Virginia adheres to the rule "that the owner or occupier of land ordinarily is under no duty to protect an invitee from a third person's criminal act committed while the invitee is upon the premises."  Gupton v. Quicke, 247 Va. 362, 363, 442 S.E.2d 658, 658 (1994) (citing Wright v. Webb, 234 Va. 527, 530, 362 S.E.2d 919, 920 (1987)).

In Wright, we fashioned a narrow, limited exception to the general rule.  There, we held that an owner or occupier of land,

"whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee."  234 Va. at 533, 362 S.E.2d at 922.  This exception requires "notice of a specific danger just prior to the assault."  Id.

In the present case, the evidence utterly fails to establish that defendant's employee knew a criminal assault was about to occur on the premises which indicated an imminent probability of harm to the plaintiff.  The employee was being harassed by a drunk, regular customer whom she knew and who was making comments personal to her.  She rejected his vile remarks and his requests to enter the booth.  There is no evidence that he displayed a firearm or that she was afraid for her own safety, or for the safety of any customer.

When the plaintiff arrived on the scene, the employee did not perceive the plaintiff was in any danger; no conversation between the plaintiff and her assailant was overheard by the employee before she moved to the rear of the booth.  Indeed, the plaintiff herself testified that "nothing" she observed "at the time" made her "afraid."  When the employee returned to the front, she still had no knowledge that any assault was occurring or was about to occur.  The fact that two vehicles remained

- 5 -

parked on the premises at nighttime was not an unusual circumstance.

When the plaintiff's friend arrived on the property, the plaintiff already had been abducted and was in the process of being attacked on adjacent property. After the friend's unsuccessful preliminary search for the plaintiff, the employee indicated that "something is wrong." However, because this statement was made after the abduction already had occurred, it fails as a matter of law to support a conclusion that, before the plaintiff was forced from defendant's premises, the employee knew of a specific danger to the plaintiff.

The question whether a duty of care exists in a negligence action is a pure question of law. Fox v. Custis, 236 Va. 69, 74, 372 S.E.2d 373, 375 (1988). In this case, the trial court erred in refusing to rule, as a matter of law, that the plaintiff had failed to establish defendant owed her a duty under these circumstances.

Consequently, we will reverse the judgment in favor of the plaintiff and enter final judgment here for the defendant.

Reversed and final judgment.