**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JANE ROE,
<u>Plaintiff-Appellant,</u>

v.

No. 96-2403

SPOTSYLVANIA MALL COMPANY;
NATIONAL SECURITY CONSULTANTS,
INCORPORATED,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-95-1802-A)

Argued: January 27, 1998

Decided: April 22, 1998

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Peter Stowell Everett, BLANKINGSHIP & KEITH, P.C.,
Fairfax, Virginia, for Appellant. Steven Walter Bancroft, TRICHILO,
BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C., Fairfax,
Virginia, for Appellees. **ON BRIEF:** Julia B. Judkins, Melissa S.
Hogue, TRICHILO, BANCROFT, MCGAVIN, HORVATH & JUD-
KINS, P.C., Fairfax, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jane Roe filed this tort action based on diversity jurisdiction against a shopping mall and its security company for injuries sustained as a result of her abduction and rape by a third party on the mall's premises. The district court granted summary judgment in favor of the mall and its security contractor, holding that under Virginia law the defendants had no duty to protect the plaintiff from the crimes of third parties. Because we conclude that, under Virginia law, the defendants did not assume a duty to protect Roe and did not otherwise have a "special relationship" duty to protect her, and therefore that the mall owed no duty to protect Roe from the criminal acts of third parties, we affirm.

I

Spotsylvania Mall Company operates a 900,000-square foot shopping mall in Spotsylvania, Virginia. The mall property includes surrounding parking lots and grassy areas. About 4,000,000 persons visit the mall each year. To provide security for the mall, Spotsylvania engages the services of National Security Consultants, Inc., to provide the mall with 240 man-hours of security guard service per week.

In the late afternoon of June 10, 1994, Roe, a female teenager, walked from her home nearby to visit the mall. As she crossed through the parking area adjoining the mall, a white car pulled up alongside her, and its driver, Paul Meredith, offered her a ride. When Roe declined, Meredith pulled a gun and ordered Roe into his car. He then drove Roe at gunpoint to a grassy knoll adjacent to the mall's south parking lot, forced her out of the car, and led her to a wooded area on the other side of the knoll where, over the course of the next 15 to 20 minutes, he raped and forcibly sodomized her. Meredith then returned Roe to the mall. Meredith was apprehended later that day

2

and eventually was convicted of rape, abduction with the intent to defile, and forcible sodomy.

Roe filed this tort action against the mall and National Security, alleging that (1) the mall breached a duty it had assumed to protect invitees from criminal assault; (2) the mall breached a duty to protect invitees because it fostered a climate of criminally assaultive activity; (3) the mall breached a duty to protect invitees because it was aware of an imminent probability of harm; (4) the mall breached a duty to warn invitees of the dangerous condition of the mall; (5) National Security breached a duty of reasonable care; and (6) National Security breached its security contract with the mall, and Roe, as an invitee, was a third-party beneficiary of the contract. On motion for summary judgment, the district court ruled that Roe had not made a showing that the mall attracted or provided a climate of assaultive crime, nor that the defendants had knowledge of the imminent probability of harm to their invitees. Having earlier dismissed Roe's other grounds for liability, it granted summary judgment in favor of the defendants.

On appeal, Roe challenges the district court's failure to address her assumption of duty argument and its ruling that the relationship between the parties did not impose a "special relationship" duty on the mall to protect Roe from the criminal actions of third parties.

II

As her first argument, Roe contends that the mall, in undertaking to hire a security company and to provide security services at the mall, assumed a duty to protect its invitees. She also contends that the mall's guards, in response to complaints about Meredith, told invitees that they would "keep an eye out" for a man fitting his description. She contends that the mall breached these assumed duties because it had only one guard on duty at the time when Roe was raped and because that guard was patrolling only the inside of the mall. Further, she asserts that the mall inadequately guarded its parking lots and adjacent areas and improperly deployed its guards.

In Virginia, landowners generally owe no duty to protect their invitees from the criminal actions of third parties. See Wright v. Webb, 362 S.E.2d 919, 920 (Va. 1987). Where a landowner has no

3

duty to exercise reasonable care, no tort action for negligence may stand. See Deem v. Charles E. Smith Management, Inc., 799 F.2d 944, 945 (4th Cir. 1986). Virginia has explicitly held that a business invitor whose method of business does not foster an environment for assault, and who is not aware of an imminent probability of harm to an invitee, "does not have a duty to take measures to protect an invitee against criminal assault." Wright, 362 S.E.2d at 922.

Although Roe can cite no controlling precedent indicating that the provision of security services extends this duty to protect, she argues that Virginia has, in some circumstances, recognized that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Ring v. Poelman, 397 S.E.2d 824, 826 (Va. 1990) (quoting Glanzer v. Shepard, 135 N.E. 275, 276 (N.Y. 1921) (Cardozo, J.)). In support of this proposition, she cites Virginia cases which hold that when a landlord enters a tenant's abode with the purpose of making repairs, the landlord must use reasonable care in performing the repairs. See Holland v. Shively, 415 S.E.2d 222, 224 (Va. 1992); Kesler v. Allen, 353 S.E.2d 777, 779 (Va. 1987).

Although Virginia has not applied this principle broadly, Roe asks us to conclude that Virginia courts would nevertheless hold that this principle applies to the provision of security services by business invitors. This we decline to do. Although Virginia has equated the duties of a proprietor to an invitee with those of a landlord to a tenant, it has also explicitly held that a landlord has no duty to"`protect his tenant from a criminal act by a third person.'" Wright, 362 S.E.2d at 921 (quoting Gulf Reston, Inc. v. Rogers, 207 S.E.2d 841, 844 (Va. 1974)). Virginia law perceives the third party's criminal action as a superseding cause of damages that obviates an invitor's potential duty to protect. Thus, we find no support for the proposition that Virginia courts would create a new "assumption of duty" exception to their general rule that invitors have no duty to protect invitees from the criminal acts of third parties.

Furthermore, under Virginia law, "in ordinary circumstances, acts of assaultive criminal behavior cannot reasonably be foreseen." Wright, 362 F.2d at 921. Thus, even if the mall did indeed have a duty to act reasonably in undertaking its security endeavors, it was not rea-

4

sonably foreseeable that a given invitee would be the victim of a criminal assault any more frequently at the mall than anywhere else. Roe alleges that around 150 crimes against the person took place at the mall during the four years before her rape. During this same time, around 16,000,000 persons visited the mall. Thus, the mall's rate of crime is less than one crime for every 100,000 visitors to the mall. Even combined with the knowledge that these 150 crimes included some small number of sexual molestations and exposures, it was simply not legally foreseeable to the mall that it would imminently need to provide protection against criminal assaults."In ordinary circumstances, it would be difficult to anticipate when, where, and how a criminal might attack a business invitee." Id. The circumstances of the mall are not out of the ordinary, and the defendants therefore assumed no duty to protect their invitees from the assaults of criminal parties when they undertook to provide security services.

III

Roe argues alternatively that the mall is liable for tort damages because of its special relationship to invitees as a business invitor. She argues that the mall, as a semi-public thoroughfare with minimal security that had experienced numerous crimes, provided a climate for assaultive crimes. She also argues that the fact that the mall had experienced over 150 crimes against the person over the course of the four years prior to Roe's rape, compounded with the mall's knowledge that a person with a description similar to Meredith's had been frequenting the mall, "trying to get young women to go to bed with him," created an imminent probability of an invitee being assaulted.

We cannot agree. Under Virginia law, a duty of care may arise when there is a "special relationship" between the parties, such as that of "business proprietor-invitee." A.H. v. Rockingham Publ'g Co., 1998 WL 23298, *2 (Va. Jan. 9, 1998). However, this duty of care can only apply to protect invitees from the criminal assaults of third parties where the proprietor's method of business"attract[s] or provide[s] a climate for assaultive crimes," or where the proprietor "knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee." Wright, 362 S.E.2d at 922.

5

Roe's argument that the Spotsylvania Mall creates a climate for assaultive crimes is unsupported in the record. Under her interpretation of Wright, almost any public accommodation would provide a climate for assaultive crimes. The Wright court is more readily understood to have meant that assault-fostering businesses are those in which the business enterprise itself is particularly solicitous of, encouraging of, or benefiting from, assaultive behavior. See Godfrey v. Boddie-Noell Enterprises, Inc., 843 F. Supp. 114, 123 (E.D. Va. 1994), aff'd, 46 F.3d 1124 (4th Cir. 1995); Rosen v. Red Roof Inns, Inc., 950 F. Supp. 156, 161 (E.D. Va. 1997). Understood this way, it is clear that the mall is not such an enterprise. Roe has not presented evidence that the mall in any way encouraged or benefited from a climate of criminal assault. On the contrary, the record shows that Spotsylvania Mall is a typical family-oriented establishment, with department stores, restaurants, and other shops.

Roe's argument that the mall knew that an imminent probability of harm faced its invitees is similarly unsupported. In order to prove that a defendant had knowledge of an imminent probability of harm, the plaintiff must be able to show that the defendant had "`notice of a specific danger just prior to the assault.'" Burns v. Johnson, 458 S.E.2d 448, 450 (Va. 1995) (quoting Wright, 362 S.E.2d at 922). In this case, Roe has put forth no evidence sufficient to allow a jury to find that the mall had such notice. Knowledge that occasional previous crimes against the person have occurred on the mall's premises does not create notice of a specific danger of assault, see, e.g., Rosen, 950 F. Supp. at 160; Rockingham, 1998 WL at *3, nor does the knowledge that a man with Meredith's description had molested one woman on the premises and had been subject of a number of complaints. If Meredith's previous conduct is sufficient to alert the mall that a rape would occur, the mall would likewise be on notice of every assault whenever it knows of arguments occurring on its premises. Roe has presented no evidence that any recent previous assaults at the mall could foretell the next one or that assaults on the mall's premises were common enough to make it reasonably foreseeable that another assault would imminently occur. Cf. Wright, 362 S.E.2d at 921-22; Rockingham, 1998 WL at *2-*3.

Finally, because National Security had no special relationship with the mall's invitees cognizable under Virginia law, it had no duty to

6

protect those invitees from the criminal acts of third parties. It therefore cannot be liable in tort for damages caused by the criminal actions taken against Roe.

AFFIRMED

7