## CIRCUIT COURT OF LOUDOUN COUNTY

Margene F. Dionysiou

v.

Cardinal Financial Corp.
and Myrna Faberlle

July 21, 2004

Case No. (Law) 29067

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on July 1, 2004, for argument on the Demurrer of the Defendants, Cardinal Financial Corporation and Myrna Faberlle, to the Verified Second Amended Motion for Judgment filed by the Plaintiff, Margene F. Dionysiou.

The Demurrer asserts that the Plaintiff has not stated a cause of action for negligence in Counts I (against Cardinal Financial) and II (against Faberlle) and has not stated a cause of action for Intentional Infliction of Emotional Distress in Count III. At the conclusion of the argument, I sustained the Demurrer as to the Intentional Infliction of Emotional Distress claim because the facts alleged do not rise to a level of conduct that is outrageous and intolerable. No further leave to amend was granted and the claim of Intentional Infliction of Emotional Distress was dismissed with prejudice.

The Demurrer to the negligence counts was taken under advisement so I could read the authorities cited by counsel.

For the reasons hereafter stated, the Demurrer to the negligence counts is overruled.

The facts relevant and material to the negligence claims as alleged in the Verified Second Amended Motion for Judgment are as follows.

On August 29, 2003, Cardinal Financial provided banking services through its subsidiary, Cardinal Bank, N.A., at a branch located in Sterling,

Loudoun County, Virginia. Defendant Myrna Faberlle was the branch manager.

Sometime prior to 9:15 a.m. on that day, a gunman entered the bank branch and demanded at gunpoint that the three employees, including Faberlle, open the vault. Even though the bank is equipped with a security alarm to summon the police, the alarm was never used. Faberlle had previously instructed employees never to use the security alarm.

Faberlle advised the gunman that the vault had a timer lock and could not be opened, even though she knew that the statement was false. Two of the employees, including Faberlle, knew the correct combination to open the vault. However, Faberlle deliberately entered a wrong combination so the vault would not open.

Faberlle offered the gunman the money at the teller desk. The gunman then demanded the money at the teller desk and warned the employees not to trigger any alarm. The gunman was given money from the teller desk and then demanded Faberlle and another employee to open the vault. Faberlle again entered a wrong combination code. Shortly thereafter, about 9:15 a.m., the Plaintiff arrived at the door to the bank to transact business.

When the gunman saw the Plaintiff outside the door to the premises, he told the three bank employees that if they did anything "stupid," then he would "waste" the Plaintiff. The Plaintiff did open the door to the bank, saw the gunman and sensed that something seemed suspicious. She hesitated and considered leaving the premises. Before she could leave, one of the bank employees called to the Plaintiff, asked her to continue inside and come to the teller window. The Plaintiff proceeded to the teller window where the three employees were standing.

Plaintiff approached the teller window and removed money from her bag. Sensing the approach of the gunman, the Plaintiff turned around and saw the gunman pointing a gun at her. Complying with the gunman's demand, she turned away from him. The gunman demanded that the Plaintiff give him her money. She complied by putting the money in the gunman's bag without looking at him.

The gunman again demanded that the vault be opened. Again, Faberlle entered an incorrect combination. The gunman then asked how long it would take for the timer lock to open the vault. Faberlle replied that it would take five to ten minutes. The gunman waited "for many minutes" for the timer to open the vault. While the gunman waited, he was behind the Plaintiff. The Plaintiff felt that he was probably pointing a gun at her or the others in the bank.

Finally, the gunman ordered everyone on the floor. They complied, and the gunman left the premises unbeknownst to them. Twice, the employees asked the Plaintiff to look to see if the gunman had left.

As a result of the incident, the Plaintiff has suffered physical and emotional injury.

The Plaintiff further alleges that "Faberlle was not under duress and acted in a manner consistent with one making calm and collected decisions based on her priority to preserve the assets of the bank."

The Defendant's Demurrer is based upon the failure of the Plaintiff to allege that either the bank, Cardinal Financial, or Faberlle, branch manager of the bank, had a duty to protect the Plaintiff from the gunman's criminal misconduct.

This case involves injuries to a business invitee on commercial property caused by the criminal acts of a third party. The facts as alleged clearly support that the Plaintiff was the victim of, at least, an assault, robbery, and abduction by the gunman.

An owner, occupier, or possessor of land must use ordinary care to keep his premises reasonably safe for an invitee. *Tate v. Rice*, 227 Va. 341, 345 (1984). Accordingly, such an owner or possessor of land is ordinarily under no duty to protect invitees from assaults by third parties while the invitee is on the premises. *Wright v. Webb*, 234 Va. 527, 530 (1987).

*Wright* recognized the general rule applicable to business invitees, but adopted a narrow exception to the general rule, as follows:

> We hold that a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee.

234 Va. at 533.

The Defendants argue that the facts alleged by the Plaintiff, as described above, do not fall within the narrow exception created by *Wright*, and the general rule of nonliability applies. The Plaintiff argues that the narrow exception applies and that she has stated a cause of action for negligence. I agree with the Plaintiff.

There is no allegation that robberies or other criminal activities have occurred recently at the bank. The Plaintiff alleges that a bank conducts a method of business that attracts or provides a climate for assaultive crimes. I

find this not to be a statement of fact but merely a conclusion. I decline to rule as a matter of law that banks attract or provide a climate for assaultive crimes, so as to make the general rule for business invitors under *Wright* not applicable to banks.

However, the Plaintiff is not completely relying on the conduct of banking business in an effort to avoid the application of the general rule of nonliability. Her argument is that this case falls under the exception because she alleges that the bank through its employees, including Faberlle, knew at the time an employee asked her to come into the bank that "criminal assaults against persons are occurring." Hence, the bank as a business invitor had a duty to take measures to protect the Plaintiff from criminal assault.

The Plaintiff has stated a cause of action under the "criminal assaults against persons are occurring" exception adopted in *Wright*. Whether a duty arises is a legal question. *Thompson v. Skate America*, 261 Va. 121, 128 (2001); *Burns v. Johnson*, 250 Va. 41, 44 (1995); *Acme Markets, Inc. v. Remschel*, 181 Va. 171, 178 (1943). *Wright* specifically did not adopt the rule espoused in the Restatement (Second) of Torts § 314A (1965) that the special relationship of business owner and invitee alone creates a duty requiring the business owner to take positive action to prevent criminal assaults by third parties while the business invitee is on the premises. However, in subsequent cases "special relationships" have been found to exist between particular plaintiffs and defendants, which may give rise to a duty of care on the part of a defendant to warn and/or protect a plaintiff against the danger of harm from reasonably foreseeable criminal acts of a third party. *Thompson v. Skate America, Inc.*, 261 Va. 121 (2001) (business invitor had knowledge that a particular individual had a history of violent criminal behavior on the premises; and, therefore, duty of care to protect other invitees from assault by that individual arose); *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125 (2000) (medical facility created *de facto* special relationship with its patient when it was determined that she was in need of constant supervision and surveillance); *Burdette v. Marks*, 244 Va. 309 (1992) (special relationship between deputy and passerby imposed legal duty on deputy to protect passerby from attack).

Accordingly, the dispositive question is whether the special relationship between the Defendants, as business invitors, and the Plaintiff, as their business invitee, gave rise to a duty of care on the part of the Defendants to protect the Plaintiff from the danger of harm from the gunman robber. It is a fact specific determination. *Dudas v. Glenwood Golf Club*, 261 Va. 133, 139 (2001).

Under *Wright*, the duty of care does not arise to protect the business invitee unless the business invitor "knows that criminal assaults against persons are occurring, or are about to occur, on the premises, which indicate an imminent probability of harm to invitee." 234 Va. at 533. The Plaintiff has alleged facts that show that the Defendants knew that criminal assaults were occurring, which indicate an imminent probability of harm to invitees.

The crucial allegations (the allegations that place this case within the exception adopted in *Wright*) are that (1) a robbery was occurring when the Plaintiff appeared at the door to the bank and (2) a bank employee, knowing that a robbery was occurring, nevertheless, asked her to come into the bank and come to the teller window. It is also significant that the Plaintiff alleges that the gunman saw the Plaintiff and had threatened to harm her before the bank employee asked the Plaintiff to continue into the bank.

A duty cannot be imposed solely upon the foreseeability of the danger of injury to a business invitee such as the Plaintiff. *See, e.g., Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 139 (2001).

As pointed out in *Dudas*, whether the exception adopted in *Wright* applies is a fact specific determination. 261 Va. at 139. As described above, the facts alleged in the Verified Second Amended Motion for Judgment do state a cause of action for negligence against the Defendants under the "criminal assaults are occurring" exception to the aforesaid general rule.

The cases also consider the "magnitude of the burden" on the bank and its employees to guard against harm to the Plaintiff by the gunman robber in determining whether the duty of care arises. The burden here does not involve the expense of security guards or other additional security devices. It does not involve requiring the bank to do something that would have a chilling effect on its business. The burden would have been simply to do or not do what a reasonable bank employee would have done under the same circumstances. On this, reasonable persons could differ. It could have been simply not asking the Plaintiff to come into the bank or telling her to leave or utilizing the security alarm or opening the vault or something else as may be ultimately determined by the trier of fact. Or maybe the trier of fact will decide that the employees acted as reasonable persons, considering the dilemma in which they found themselves.

At first glance, the case of *Boyd v. Racine Currency Exchange*, 56 Ill. 2d 95, 306 N.E.2d 39 (1973), cited by the Defendants, seems to support their position that the general rule of *Wright v. Webb* applies to the facts alleged by the Plaintiff. In *Boyd*, a wrongful death action, the Supreme Court of Illinois held that no cause of action was stated when the decedent, a customer at a bank, was shot and killed by a robber who, holding a gun to decedent's head

had demanded that a teller give him the money, but the teller decided not to comply and instead fell to the floor. *Boyd* is not applicable because the decedent was already in the bank when the robber came in, placed a gun to the decedent's head, and demanded money.

The other four cases cited by the Defendants, *Berdeaux v. City National Bank of Birmingham, Alabama*, 424 So. 2d 594 (Ala. 1982); *Bence v. Crawford Savings & Loan Associates*, 80 Ill. App. 3d 491, 400 N.E.2d 39 (1980); *Nigido v. First National Bank of Baltimore*, 264 Md. 702, 288 A.2d 127 (1972); and *Noll v. Marian*, 347 Pa. 213, 32 A.2d 18 (1943), are also distinguishable. In all four cases, the customer injured or killed by a robber was already in the bank when the robbery occurred. They did not involve the present situation where the Plaintiff appeared at the door to the bank while the robbery was in progress. Please refer to the crucial allegations I described above.

I think that what Judge Clifford R. Weckstein of the City of Roanoke Circuit Court stated in an opinion concerning demurrers is applicable here. He wrote:

> The Supreme Court of Virginia has admonished trial judges against "short circuiting the litigation upon demurrer"; to be careful lest "the parties on brief argue the issues as if all the facts outside the pleadings are properly before this Court; they are not." Even if "the pleadings leave many factual questions unanswered," and there are "matters that need to be addressed if the plaintiffs are to recover," a plaintiff should not be precluded from going forward with its case. The Supreme Court, as Justice Kinser recently wrote, has "often warned of the dangers of 'short circuiting' litigation because in doing so, a trial court 'deprives a litigant of his day in court and deprives this Court of an opportunity to review a [more] thoroughly developed record on appeal'."

*NCR Management Services Corp., Inc. v. First Va. Bank-Southwest*, 63 Va. Cir. 68 (2003) (citations omitted).