# COURT OF APPEALS OF VIRGINIA

## Record No. 1623-25-1

PENINSULA FAMILY SKATING CENTER, INC.

v.

ROS WILLIS, AS ADMINISTRATOR OF THE ESTATE OF
ZIERRE BROWN, DECEASED

Present: Judges Ortiz, Chaney and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued June 16, 2026[*]

### FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Rebecca M. Robinson, Judge[1]

Katherine M. Lennon Ellis (Richard H. Ottinger; Ryan W. Weber; Woods Rogers Vandeventer Black PLC, on briefs), for appellant.

George T. Albiston (Christopher M. Albiston; Albiston Brannon & Gilbert, on brief), for appellee.

### MEMORANDUM OPINION BY
### <u>JUDGE STEVEN C. FRUCCI</u>

The Circuit Court of the City of Newport News overruled Peninsula Family Skating Center, Inc.'s (the "Skating Center") demurrer to the amended complaint of Ros Willis, as the administrator of the estate of Zierre Brown, deceased (the "Estate"). The Estate's amended complaint alleged that the Skating Center was liable for the death of Zierre Brown (the "decedent") because it breached its duty "to protect the infant and to call for medical attention." On appeal, the Skating Center argues that the circuit court erred in holding that it owed a duty to the decedent to

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Robinson entered the order certifying the amended demurrer order for interlocutory appeal. Judge Gary A. Mills presided over the demurrer hearing and entered the order overruling appellant's demurrer.

call an ambulance for medical attention. For the following reasons, we reverse the ruling of the circuit court.

BACKGROUND

On November 14, 2020, decedent was at the Skating Center when he began to suffer from an asthma attack. The Skating Center's employees were asked to call an ambulance—the request was denied. The decedent ultimately passed away four days later.

*Procedural History*

On April 12, 2023, Ros Willis qualified as the administrator of the estate of the decedent. On May 4, 2023, the Estate filed this wrongful death action against Main Street Skate LLC d/b/a Peninsula Family Skating Center in the Circuit Court for the City of Hampton.[2] The Estate alleged that the defendant was negligent because it owed a duty to the decedent "to protect the infant and to call for medical attention" and that it "breached the aforesaid duty and failed to call for medical help" which was the proximate cause of the decedent's death.[3] On September 13, 2023, the Estate moved to amend the complaint to add the Skating Center as a defendant—the Circuit Court of the City of Hampton granted the motion.[4]

On October 30, 2023, the Skating Center filed a demurrer and plea in bar[5] to the amended complaint. In its demurrer, the Skating Center argued that it did not owe a duty to the decedent

---

[2] On January 22, 2024, the case was transferred by an agreed order to the Circuit Court of the City of Newport News.

[3] The Estate also alleged that "negligent training" was a proximate cause of the decedent's death, but the Estate conceded the allegation was poorly pleaded and asked the circuit court for leave to amend said allegation.

[4] On March 21, 2024, Main Street Skate LLC d/b/a Peninsula Family Skating Center was nonsuited as a party, leaving the Skating Center as the only defendant.

[5] After a hearing, the circuit court denied the Skating Center's plea in bar to the statute of limitations. That ruling is not at issue in this interlocutory appeal.

under the facts pleaded. Rather, it argued that its duty to the decedent was to "use ordinary care to maintain the premises in a reasonably safe condition" and it had no duty to rescue the decedent. On June 6, 2024, the circuit court held a hearing on the demurrer. After argument, the circuit court overruled the demurrer, stating that it would be an issue "for the jury to decide, whether or not the skate rink and its employees . . . exercised reasonable care as a result of the special relationship." On September 4, 2025, the circuit court certified the amended demurrer order for this interlocutory appeal.

ANALYSIS

We review the circuit court's ruling on a demurrer de novo. *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 473 (2017). In reviewing a circuit court's decision on a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Wright v. Graves*, 78 Va. App. 777, 781 (2023).

The Skating Center argues that it did not owe a duty to the decedent to call for emergency medical services. "'[W]hether a legal duty in tort exists is a pure question of law to be reviewed de novo' on appeal." *Woods v. Sing Szechuan Rest., LLC*, 84 Va. App. 321, 330-31 (2025) (quoting *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 79 (2019)). As an initial matter, a special relationship existed between the Skating Center and the decedent: the Skating Center as the owner of the premises and the decedent as an invitee.

> An owner of premises owes a duty to its invitee (1) to use ordinary care to have the premises in a reasonably safe condition for the invitee's use consistent with the invitation, and (2) to use ordinary care to warn its invitee of any unsafe condition that was known, or by the use of ordinary care should have been known, to the owner; except that the owner has no duty to warn its invitee of an unsafe condition which is open and obvious to a reasonable person exercising ordinary care for his own safety.

*Fobbs v. Webb Bldg. Ltd. Partnership*, 232 Va. 227, 229 (1986). As such, "[t]he owner or proprietor of a place of amusement, or entertainment, is not an insurer of the safety of his invitees." *Whitfield v. Cox*, 189 Va. 219, 223 (1949). Rather, the owner of premises "owes the invitee the duty to use ordinary care to maintain the premises in a reasonably safe condition." *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 327 (1977) (citing *Culpepper v. Neff*, 204 Va. 800, 804-05 (1964)).

The Estate did not allege that any unsafe condition on the premises proximately caused the decedent's injury. And the business-invitee relationship does not transfer a business owner's premises liability duty into a general duty to rescue from a medical emergency that the owner did not cause or worsen. Thus, the alleged duty breached by the Skating Center did not arise from the special relationship, but from general negligence principles.[6] Accordingly, we analyze whether the Skating Center owed a duty under general negligence principles.

"General negligence principles require a person to exercise due care to avoid injuring others." *Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 242 (2018) (quoting *RGR, LLC v. Settle*, 288 Va. 260, 275 (2014)). "Specifically, the common law requires that 'every person

---

[6] The Estate urges this Court to recognize a heightened duty that would require the Skating Center to "give [its invitees] first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement (Second) of Torts § 314(A)(1)(b) (1965). However, the Supreme Court has not adopted section 314 of the Restatement of Torts, and we decline to do so here. *See Wright v. Webb*, 234 Va. 527, 530 (1987) (declining to adopt the Restatement rule or to create a duty requiring a business to take positive action to protect its invitees from unforeseen harm).

[must] exercise ordinary care in the use and maintenance of his own property to *prevent* injury to others.'" *Id.* (alteration in original) (emphasis added) (quoting *Perlin v. Chappell*, 198 Va. 861, 864 (1957)). The Skating Center owed a duty to the decedent to exercise ordinary care to avoid injuring the decedent. But importantly, the decedent was already suffering from injury, i.e., the asthma attack, when the employees of the Skating Center were asked to call for emergency medical services. Said another way, the employees were asked to assist in rescuing the decedent from the injury he was already suffering from, an injury that, according to the pleadings, came about from no fault of the Skating Center. And, as stated above, the general duty of care is to exercise due care to avoid harming someone, not to act in a reasonable way to rescue or provide aid to someone who is already suffering from an injury. In addition, there are no allegations that the Skating Center prevented others from calling an ambulance, or that employees said they would request medical care and then failed to do so. Therefore, although the Estate correctly admits that there is no general duty to rescue, it avers that the Skating Center still owed the decedent a duty to call for emergency medical services. However, for the reasons stated above, this alleged duty is, in reality, a duty to rescue.

"[A]t common law, there is no general duty to rescue." *Stoots v. Marion Life Saving Crew, Inc.*, 300 Va. 354, 362 (2021) (citing W. Page Keeton et al., Prosser & Keeton on Torts § 56 at 375 (5th ed. 1984) ("[T]he law has persistently refused to impose on a stranger the moral obligation of common humanity to go to the aid of another human being who is in danger, even if the other is in danger of losing his life." (alteration in original))). Our Supreme Court has recognized that "one who assumes to act, even though gratuitously, may therefore become subject to the duty of acting carefully, if he acts at all." *Id.* (quoting *Didato v. Strehler*, 262 Va. 617, 628 (2001)). Accordingly, "*if* an individual undertook to perform rescue operations, that individual was held to a duty of ordinary care." *Id.* (emphasis added). "[S]uch a state of affairs

- 5 -

offers no encouragement for individuals to volunteer to help another in danger; rather, it 'operates as a real, and serious, deterrent to the giving of needed aid.'" *Id.* (quoting Prosser & Keeton on Torts § 56, at 378). "Indeed, '[t]he result of all this is that the good Samaritan who tries to help may find himself [punished with] damages, while the priest and the Levite who pass by on the other side go on their cheerful way rejoicing.'" *Id.* (alterations in original) (quoting Prosser & Keeton on Torts § 56, at 378).

"[N]egligence is the violation of a legal duty which one owes to another, and where there is no legal duty there is no actionable negligence." *RGR, LLC*, 288 Va. at 275 (alteration in original) (quoting *Veale v. Norfolk & W. Ry. Co.*, 205 Va. 822, 825 (1965)). As such, since there was no legal duty for the Skating Center to call an ambulance for the decedent, there is no actionable negligence.

CONCLUSION

For the foregoing reasons, the circuit court erred in overruling the Skating Center's demurrer. We therefore reverse its decision and remand the case for further proceedings consistent with this opinion.[7]

*Reversed and remanded.*

---

[7] At oral argument, counsel for the Estate brought up the subject of leave to amend in the event this Court reversed the circuit court's decision to overrule the demurrer. However, because the Estate was victorious at the trial level, the issue was not addressed by the circuit court, and therefore it is not before us on appeal. As such, if any motions for leave to amend are filed as a result of this ruling, such motions are outside of our purview and squarely before the circuit court.