■ JOAQUIN PAGAN, as Administrator of the Estate of GEORGINA BONE, Also Known as INGINIA RIVERA and INGINIA PAGAN, Deceased, Respondent, v HAMPTON HOUSES, INC., et al., Appellants.—Order, Supreme Court, New York County (Irma Vidal Santaella, J.), entered on or about January 31, 1992, which denied defendants' respective motion and cross motion for summary judgment dismissing the complaint and cross claim, unanimously reversed, on the law, the motion and cross motion granted and the complaint dismissed as to both defendants, without costs. The Clerk is directed to enter judgment in favor of the defendants-appellants, dismissing the complaint.

On January 28, 1988, 74 year old Georgina Bone, a resident of apartment 1C at 273 West 131st Street, was found murdered in her apartment. Defendant Hampton Houses owned and managed the building. Prior to the crime, Hampton Houses had contracted with defendant KBI to provide security services for the building.

As in *Bernal v Pinkerton's, Inc.* (52 AD2d 760, *affd* 41 NY2d 938), KBI's standard agreement to provide security services for the landlord makes no mention of the tenants and explicitly states that KBI agrees to perform such duties as specified by the landlord "that will assist [Hampton Houses] in the protection of *its* property, assets and personnel." (Emphasis added.)

It is settled that "[b]efore an injured party may recover as a third-party beneficiary for failure to perform a duty imposed by contract, it must clearly appear from the provisions of the contract that the parties thereto intended to confer a direct benefit on the alleged third-party beneficiary to protect him [or her] from physical injury." *(Bernal v Pinkerton's, Inc., supra,* at 760 [citations omitted].) Absent any such showing, KBI is entitled to summary judgment dismissing the complaint and cross claim.

Similarly, given the fact that there were no signs of forced entry into the decedent's apartment, plaintiff simply cannot prove that it is more likely than not that decedent's injuries

and death were caused by an unauthorized intruder. It is just as likely that the crime was committed by someone known to decedent whose presence in the building was not due to any negligence on the landlord's part.

Despite conflicting allegations of prior criminal acts of violence against persons in or near the building and assertions that the building's security guard was frequently not at the lobby desk and that a rear door providing access to the lobby area had no lock and the lock on the rear exterior door was broken, plaintiff has failed to come forward with evidence that negligence, if any, on the part of the landlord or KBI was the proximate cause of the decedent's injuries and death.

Although negligence cases do not lend themselves to summary judgment *(Gilmartin v Helmsley-Spear, Inc.,* 162 AD2d 275), under this set of facts it must be concluded that without any proof whatsoever as to the manner in which the murderer gained access to the building and, more importantly, decedent's apartment, plaintiff cannot prove that Hampton Houses' negligence, if any, was the proximate cause of decedent's death *(see, Hendricks v Kempler,* 156 AD2d 425, *lv denied* 77 NY2d 808). Concur—Rosenberger, J. P., Ellerin, Kupferman and Kassal, JJ.