Karen J. STICKLE, Plaintiff,

v.

CITY–WIDE SECURITY SERVICES, INC. and Mitsubishi Bank, Defendants.

No. 91 Civ. 5372 (LLS).

United States District Court, S.D. New York.

Nov. 4, 1993.

Memorandum Endorsement Dec. 17, 1993.

---

Michael Flynn, Elkind, Flynn & Maurer, P.C., New York, NY, for plaintiff.

Louis Escobar, Jr., Jacobowitz, Garfinkel & Lesman, New York, NY, for City–Wide Security Services, Inc.

Hyman Hillenbrand, Kroll & Tract, New York, NY, for Mitsubishi Bank.

### OPINION AND ORDER

STANTON, District Judge.

Plaintiff, who was assaulted on the eighty-fifth floor of the World Trade center, brought this negligence action against the security company and the lessee of the floor.

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

### BACKGROUND

On October 15, 1990, at approximately five p.m., plaintiff completed her day's work as an employee of the Port Authority of New York and New Jersey, and boarded an elevator to descend from the eighty-sixth floor of the World Trade Center and begin her commute home. In the elevator, an unknown assailant grabbed her and dragged her onto the unoccupied eighty-fifth floor. According to the Complaint, plaintiff was then "beaten, molested, threatened, assaulted and placed in fear of death and great bodily harm, including rape." (Complaint ¶ 4).

The eighty-fifth floor's sole tenant, Mitsubishi Bank (the "Bank"), had moved out of the space a year before the assault, leaving behind some equipment and furniture. After its move, the Bank experienced a series of criminal intrusions on the floor: it lost answering machines, surveillance cameras, bathroom fixtures and furniture to vandalism and theft. The Bank reported the incidents to Port Authority security director Anthony Coppolecchia who, in response, discontinued elevator service to the floor and installed a motion-detecting protective system.

On August 31, 1990, Daniel Ragan, a vice-president of the Bank, wrote to Mr. Coppolecchia, informing him that the Bank had found a subtenant and that the motion detection system should be disconnected permanently. (Transcript of Deposition of Anthony Coppolecchia dated November 5, 1992 at 33). Mr. Coppolecchia testified that the Bank also requested that elevator service be restored to the floor effective September 5, 1990, and that the elevator was servicing the floor through the date of the assault. (*Id.* at 36–38). The Bank contends that it requested elevator service only for one day, so that it could remove the remaining furniture. (Mitsubishi Bank's Statement pursuant to Local Rule 3(g) ¶ 14).

Plaintiff claims that the Bank and City–Wide Security Services ("City–Wide"), which provides unarmed security guards to the World Trade Center, were negligent in failing to secure the vacant floor.

Defendants move for summary judgment.

### DISCUSSION

1. *Mitsubishi Bank*

To establish negligence under New York law, a plaintiff must prove: "(1) a duty

owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985). A person in possession of realty as an owner or a tenant is under a "duty to take reasonable precautionary measures to secure the premises if it has notice of a likelihood of criminal intrusions posing a threat to safety." *Waters v. New York City Housing Authority,* 69 N.Y.2d 225, 228, 505 N.E.2d 922, 923, 513 N.Y.S.2d 356, 357 (1987). That duty extends to those "who might reasonably be expected to be on the premises." *Id.* at 230, 505 N.E.2d at 924, 513 N.Y.S.2d at 358–59.

■ The Bank argues that it did not owe a duty to plaintiff, who worked on a different floor and for a different employer. It relies on *Waters v. New York City Housing Authority,* 69 N.Y.2d 225, 505 N.E.2d 922, 513 N.Y.S.2d 356 (1987), in which the New York Court of Appeals held that the owner of an apartment building, who had not kept the building's security system in good repair, could not be held liable in tort solely because the building was used to complete a crime that began on a public street. The plaintiff in that case "had no connection whatsoever to the building in which her injuries ultimately occurred." *Id.* at 228, 505 N.E.2d at 923, 513 N.Y.S.2d at 357–58. The court explained that a landowner's duty does not embrace the general public:

> Although strict notions of privity are not dispositive in defining the scope of a landowner's duty, in this case both logic and public policy weigh heavily in favor of confining the scope of defendant landowner's duty to protect against criminal acts to tenants and others who might reasonably be expected to be on the premises. An important consideration in this context is the fact that the landowner has no control over either the acts of the primary wrongdoer or the conditions on the public byways that make such acts all too commonplace. Another significant factor is the virtually limitless liability to which defendant and other landowners would be exposed if their legal obligations were ex-

tended to plaintiff and to all others in her position.

*Id.* at 230, 505 N.E.2d at 924, 513 N.Y.S.2d at 358 (citations omitted). *See also Kulier v. Harran Transportation Co., Inc.,* 189 A.D.2d 803, 804, 592 N.Y.S.2d 433, 434 (2d Dep't 1993) (no connection between plaintiff and the subject premises independent of the crime itself).

Unlike the plaintiff in *Waters,* who had no association with the premises independent of the crime itself, Ms. Stickle worked on a neighboring floor. New York courts have recognized a duty to one's neighbor to maintain property in a safe condition. In *Russo by Russo v. Grace Institute,* 145 Misc.2d 242, 546 N.Y.S.2d 509 (N.Y.Sup.Ct.), *aff'd without opinion,* 153 A.D.2d 820, 545 N.Y.S.2d 547 (1st Dep't 1989), for instance, a tenant alleged that robbers gained access to his apartment by means of a scaffolding erected by his neighbor. The court acknowledged that a landowner's duty does not extend to "every passing stranger or to the public generally," but also recognized that a landowner's duty does not invariably end at the property line: it extends "to a limited group of adjacent dwellers such as plaintiff in this action, to whom harm may foreseeably befall." *Id.* at 244, 546 N.Y.S.2d at 510.

As an employee who worked on a neighboring floor, plaintiff was part of a limited and identifiable class of people who were vulnerable to the potential dangers posed by the vacant and unsecured eighty-fifth floor. Thus, unlike *Waters,* recognizing a duty to those in plaintiff's position does not threaten to expose landowners or tenants to excessive liability.

■ The bank further argues that the history of vandalism and theft on the eighty-fifth floor did not place it on notice "of a likelihood of criminal intrusions posing a threat to safety." *Waters,* 69 N.Y.2d at 227, 505 N.E.2d at 922, 513 N.Y.S.2d at 357. But that cannot be determined as a matter of law on this record. This does not appear to be a case of isolated and minor incidents of theft. *See, e.g., Iannelli v. Powers,* 114 A.D.2d 157, 162, 498 N.Y.S.2d 377, 381 (2d Dep't) ("just two relatively minor incidents had been reported"), *appeal denied,* 68 N.Y.2d 604, 497

N.E.2d 707, 506 N.Y.S.2d 1027 (1986). The eighty-fifth floor seems to have experienced a pattern of vandalism and theft. (Transcript of Deposition of Roland Santiago dated March 30, 1993 at 19–24; Transcript of Deposition of Daniel Ragan dated September 10, 1992 at 19–22; Coppolecchia Tr. at 77–79). Under these circumstances, it cannot now be determined as a matter of law that the Bank could not have reasonably foreseen a threat to the safety of its neighbors.

According to the Bank, even if it did owe plaintiff a duty, the unforeseeable criminal act of the unknown assailant broke any causal connection between its alleged negligence and plaintiff's injuries. Plaintiff argues, however, that there are strong indications that the assailant had been to the floor prior to the assault (*e.g.*, his knowledge of where to find rope), and that the presence of the vacant and unsecured space was a substantial factor in his decision to commit the crime. (Transcript of Deposition of Karen Stickle dated December 2, 1992 at 40; Plaintiff Memorandum at Law at 13). These raise fact issues. Accordingly, the Bank's motion for summary judgment is denied.

### 2. *City–Wide Security Service, Inc.*

■ According to plaintiff, City–Wide was negligent in failing to monitor or patrol the elevators and in failing to prevent access to the unoccupied eighty-fifth floor. She argues that City–Wide had a duty to protect her because she was "in a class of persons specifically intended to be covered by the contract between the Port Authority and 'City–Wide.'" (Plaintiff's Memorandum at 15). The contract provides:

> The undersigned (hereinafter called the 'contractor') hereby offers and agrees to furnish the Port Authority with unarmed uniformed guard personnel trained in the profession of (1) protection of life and property, and (2) safeguarding materials and equipment for all of the patrons, tenants, visitors, construction and maintenance employees, and Port Authority employees of the World Trade Center....

(Affirmation of Louis Escobar sworn to March 22, 1993, Ex. E).

■ For plaintiff to recover as a third-party beneficiary of the contract, "it must clearly appear from the provisions of the contract that the parties thereto intended to confer a direct benefit on the alleged third party beneficiary to protect him from physical injury." *Bernal v. Pinkerton's, Inc.*, 52 A.D.2d 760, 761, 382 N.Y.S.2d 769, 770 (1st Dep't), *aff'd without opinion*, 41 N.Y.2d 938, 394 N.Y.S.2d 638, 363 N.E.2d 362 (1976).

While one may argue for different readings of the contract, there is a natural reading which clearly provides for guarding the building's tenants. This follows from separating the portion regarding training ("trained in the profession of (1) protection of life and property, and (2) safeguarding materials and equipment") from the rest of the sentence. Without that parenthetical material, the sentence obliges City–Wide to "furnish the Port Authority with unarmed uniformed guard personnel ... for all of the patrons, tenants, visitors, construction and maintenance employees, and Port Authority employees of the World Trade Center...." Accordingly, on the present record it cannot be held as a matter of law that Ms. Stickle was not a third-party beneficiary of the contract. Whether City–Wide was responsible for alerting the Port Authority to the alleged hazard to Ms. Stickle is a question of fact. Accordingly, City–Wide's motion for summary judgment is denied.

### CONCLUSION

The Bank's and City–Wide's motions for summary judgment are denied.

So ordered.

### *MEMORANDUM ENDORSEMENT*

Dec. 17, 1993.

Mitsubishi Bank (the "Bank") and City–Wide Security Services ("City–Wide") move pursuant to 28 U.S.C. § 1292(b) for an order certifying for appeal this court's Opinion and Order dated November 4, 1993, page 210, which denied their motions for summary judgment.

1. Section 1292(b) provides that an interlocutory order of a district court may be certified for appeal if the court is "of the opinion that such order involves a controlling

question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Court of Appeals for the Second Circuit repeatedly has cautioned "the district court to exercise great care in making § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992). *See also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990) (only "exceptional circumstances" justify an interlocutory appeal).

2. City–Wide argues that the question whether plaintiff was a third-party beneficiary should be certified for appeal because the court departed from prevailing New York law on that issue. According to City–Wide, if "this Court's decision is upheld, it would overrule the New York State Appellate Court's decision in *Pagan*." (City–Wide's Memorandum at 5). Not so. This court applied the same standard that was articulated in *Pagan v. Hampton Houses, Inc.*, 187 A.D.2d 325, 589 N.Y.S.2d 471 (1st Dep't 1992), and that is applied generally in New York courts. Upon review of the agreement between City–Wide and the Port Authority, the court found that "there is a natural reading which clearly provides for guarding the building's tenants." See Opinion and Order dated November 4, 1993 at page 210. Disagreement over that conclusion does not justify certifying the question for an interlocutory appeal. Accordingly, City–Wide's motion for certification is denied.

3. The Bank also argues that in denying its motion for summary judgment, the court departed from prevailing New York law. According to the Bank, the duty to provide security at the World Trade Center rests exclusively with the Port Authority as landlord. The case law, however, does not restrict liability to landlords. *See, e.g., Newell v. Swiss Reassurance Co., Inc.*, 181 A.D.2d 505, 506, 580 N.Y.S.2d 361, 362 (1st Dep't 1992) ("A person who possesses realty either as an owner or a tenant is under a duty to exercise reasonable care to maintain the premises in a safe condition, including taking reasonable precautions to protect members of the public from foreseeable criminal acts of third persons.").

Assuming facts in the light most favorable to plaintiff, the Bank exercised control over security arrangements for the eighty-fifth floor: it instructed Port Authority security to disengage the motion detection system and to restore elevator service to the vacant floor indefinitely, even though it was on notice that its actions would pose a threat to the safety of its neighbors. Plaintiff may maintain suit against the Bank for its alleged role in creating a foreseeable hazard on its premises.

In any event, an appeal would not materially advance the ultimate termination of the litigation. Even were the Bank successful on appeal, there would remain a trial on plaintiff's claims against City–Wide. An interlocutory appeal would simply delay the proceedings. *See American Geophysical Union v. Texaco, Inc.*, 802 F.Supp. 1, 29 (S.D.N.Y. 1992) (" 'The critical requirement is that [the issue] have the potential for substantially accelerating the disposition of the litigation.' "), quoting 9 Moore's Federal Practice ¶ 110.22[2], at 260 (1988). Accordingly, the Bank's motion for certification is also denied.

So ordered.