(May 25, 2000)

■ KATAYOUN SAKHAI et al., Respondents, v 411 EAST 57TH STREET CORPORATION, Appellant. [707 NYS2d 630] —Order, Supreme Court, New York County (Emily Goodman, J.), entered April 6, 1998, which denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the complaint.

Plaintiff Katayoun Sakhai and her husband live in an apartment she owns with her father, Iraj Sakhai, in a high-security residential cooperative building owned and managed by defendant. The building has 104 apartments and a small garage that accommodates 12 cars. There are three entrances to the building, all of which open onto 57th Street. A doorman is present at the main entrance 24 hours a day. Inside the main entrance is a security desk where a light goes on and a buzzer sounds when any of the doors are opened. The doorman keeps a log of all deliveries and repair visits and the names of all guests who have tenants' written permission to enter their apartments in the tenants' absence. Behind the security desk is a locked mailroom where building staff store articles addressed to tenants who are not home to take delivery of them. At the time of the events giving rise to this action, spare keys to some of the apartments were also kept in this room. The room has no windows and only the doorman, superintendent and handyman have keys to the single locked door.

Next to the main entrance is a service door that leads to the basement. Only building staff have keys to the service door, which is connected to the alarm system at the security desk. The garage door, which remains closed when no car is entering or exiting, is operated by remote control. Each tenant who uses the garage has a remote control unit. The doorman also has one so he can close the door when a tenant forgets to do so. A hallway with a door at each end leads from the garage to the foyer of the building. The doors are controlled by a magnetic electric lock that prevents them from being opened at the same time. These doors and the garage door are connected to the

alarm system at the security desk. Also at the security desk are television monitors connected to cameras overseeing the garage entrance and the basement hallways and elevators.

On November 25, 1991, while plaintiff and her husband were out, their apartment was burglarized. A jewelry box and its contents, three pieces of an antique silver tea set, and three large oriental rugs were taken. Plaintiff's husband reported the burglary to the police and to the building superintendent. Suspecting an "inside job," he also demanded, and received, the spare apartment key held by the building. Plaintiff and her husband were told by the police and a locksmith they hired to change the locks that there was no sign of forced entry. No one was arrested in connection with the burglary and none of the property was recovered.

Plaintiffs commenced this action on the theory that building security was inadequate as a result of defendant's negligence. Specifically, plaintiffs alleged that defendant was negligent in permitting the burglar to enter the building, to gain access to plaintiff's apartment and to remove property from the apartment. Only plaintiff and her husband and the building had keys to the apartment, and plaintiff and her husband had never lost or loaned anyone their keys. The only entrance to the apartment is through a self-locking door that opens onto the corridor. The apartment is on the 12th floor and there is no fire escape or balcony at any of the windows. Plaintiffs alleged that building staff permitted the burglar, without first ascertaining whether or not he was an authorized workman or deliveryman, to enter their apartment, using the spare key, and remove the stolen property from the building.

On summary judgment, defendant argued that plaintiffs' theory of how the burglary occurred depends on the assumptions that the burglar was not a tenant, a guest of a tenant or an employee of defendant, and that the stolen items were immediately removed from the building. Defendant contended that plaintiffs offered no evidence tending to prove either of these assumptions, and therefore failed to demonstrate that defendant's negligence was the proximate cause of their loss.

While landlords have a common law duty to take minimal precautions to protect tenants from foreseeable criminal activity by third persons (*Nallan v Helmsley-Spear, Inc.*, 50 NY2d 507), an injured tenant may recover damages only on a showing that the landlord's negligent conduct was a proximate cause of the injury (*Miller v State of New York*, 62 NY2d 506). Since even a fully secured entrance would not keep out another tenant, or someone allowed into the building by another tenant,

the burden of proof on the plaintiff at trial is to offer evidence that it is more likely or more reasonable than not, where the identity of the criminal actor is unknown, that the injury was perpetrated by an intruder who gained access to the premises through a negligently maintained entrance (*Burgos v Aqueduct Realty*, 92 NY2d 544). To withstand summary judgment, the plaintiff need only raise a triable issue of fact as to whether the defendant's conduct proximately caused the injury (*supra*). However, absent such a showing, the theory that the defendant's inadequate security measures permitted an intruder to gain entry to the premises necessarily entails speculation and will not survive summary judgment (*Maria S. v Willow Enters.*, 234 AD2d 177).

Plaintiffs argued that the burglar must have used the spare key held by the building to enter their apartment, because there was no sign of forced entry. However, they offered no evidence of the identity of the burglar, the manner in which he gained access to the building and their apartment, the nature of defendant's negligence, or the causal link between defendant's negligence and their loss. At most, they demonstrated that the entry into the apartment was not forced. By her own testimony, plaintiff only "assumed," because there was no sign of forced entry, that the burglar used the spare key to the apartment. However, the mere fact that there was no sign of forced entry does not establish that the burglar entered the apartment by using defendant's copy of the key (*Segev v Trump Parc Condominium*, 215 AD2d 322; *Pagan v Hampton Houses*, 187 AD2d 325). It is equally likely, for instance, that the burglar used lock picks.

Plaintiffs also argued that the doorman was not performing his duties properly or he would have observed the burglar removing the carpets, which were too large to be hidden, from the building. However, they offered no evidence that the carpets were removed from the building at all. It is mere speculation that defendant's employees were negligent (*see, Maria S. v Willow Enters., supra*).

The most likely theory of how the burglary occurred is, unfortunately for plaintiffs, fatal to their claim. Plaintiff herself stated in opposition to the motion that "the only way the theft could have been effectuated was by one of the Defendant's employees or with the permission of the Defendant's employees." In that event, defendant would bear no liability, because its employees would have been acting for their own personal gain and not in furtherance of defendant's business (*Manno v Mione*, 249 AD2d 372), and plaintiffs did not argue or offer evi-

dence that defendant knew or should have known that any of its employees had a propensity for the conduct that caused plaintiffs' loss (*Rodriguez v United Transp. Co.*, 246 AD2d 178). Concur—Sullivan, P. J., Ellerin, Lerner and Buckley, JJ.