Filed 5/22/25  Davallou v. County of Santa Clara CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FIROOZEH DAVALLOU et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant and Respondent. | H051963<br>(Santa Clara County<br>Super. Ct. No. 22CV399418) |
| TERRA FRITCH et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant and Respondent. | H051964<br>(Santa Clara County<br>Super. Ct. No. 22CV399095) |
| G.M. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant and Respondent. | H051972<br>(Santa Clara County<br>Super. Ct. No. 22CV399096) |

| VICKI LANE et al., | H052003 |
| | (Santa Clara County |
| Plaintiffs and Appellants, | Super. Ct. No. 22CV398848) |
| | |
| v. | |
| | |
| COUNTY OF SANTA CLARA, | |
| | |
| Defendant and Respondent. | |

On May 26, 2021, Samuel Cassidy, an employee of the Santa Clara Valley Transportation Authority (VTA), walked into the VTA's Guadalupe Division facility during the change between the overnight and morning shifts, the facility's busiest time. He carried three semiautomatic handguns and 32 high-capacity magazines, and he proceeded to fire nearly 40 rounds, killing nine VTA employees, including Abdolvahab Alaghmandan, Jose Hernandez III, Timothy Romo, Alex Fritch, Paul Megia, Michael Rudometkin, Taptejdeep Singh, and Lars Kepler Lane.

The estates of these slain employees and their surviving family members have sued, claiming, among other things, wrongful death and breach of contract. These plaintiffs indisputably have suffered grievous injury. However, the person most directly responsible for that injury—the shooter Samuel Cassidy—killed himself during the May 26, 2021 incident, and his estate is presumably incapable of compensating plaintiffs for the injury and damage he caused. Accordingly, plaintiffs have sued other parties: the VTA, the private companies responsible for providing security at the Guadalupe Division facility, the County of Santa Clara (County), and the Santa Clara County Sheriff's Office (Sheriff's Office).

Although plaintiffs' claims against the private security companies and, in one case, against the VTA appear to be proceeding, the trial court dismissed the wrongful death and contract claims against the County and the Sheriff's Office. The court did so without considering the merits of plaintiffs' allegations that the County and the Sheriff's

2

Office acted deficiently in failing to prevent Cassidy from entering the Guadalupe Division facility armed with semiautomatic weapons. Instead, the court held that government immunity bars the wrongful death claims against the County and the Sheriff's Office. In addition, the court denied plaintiffs' contract claims because those claims are based on a contract between the County and the VTA and the court concluded that plaintiffs are not third party beneficiaries entitled to enforce the contract.

Plaintiffs now appeal the dismissal of their wrongful death and contract claims against the County and the Sheriff's Office. We acknowledge that this is a harsh result, which, despite plaintiffs' tragic loss, denied recovery without considering the merits of their allegations of deficient conduct by the County and the Sheriff's Office. Nonetheless, for the reasons explained below, we conclude that the trial court correctly applied the law in dismissing plaintiffs' claims and therefore affirm the judgments in favor of the County and the Sheriff's Office.

## I. BACKGROUND

Because we are reviewing orders sustaining demurrers, we accept all properly pleaded allegations and draw the summary of the facts below from the allegations in plaintiffs' pleadings and attached documents. (See, e.g., *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.)

### A. The Supplemental Law Enforcement Contract

In addition to contracting with Allied Barton Security Services "for security and protective services," VTA entered into a contract with the County for "supplemental law enforcement support services" provided through the Sheriff's Office (the Supplemental Law Enforcement Contract). The Supplemental Law Enforcement Contract noted that, "[i]n order to provide for overall public safety and security for VTA's patrons, employees, equipment and facilities, VTA has established a Transit Patrol Division, to be staffed by the Office of the Sheriff." The contract also stated that the Sheriff's Office

3

would provide "public safety, law enforcement, security support, and communications, and dispatch services and equipment."

The Supplemental Law Enforcement Contract required the Sheriff's Office to provide "sworn law enforcement personnel" for a number of tasks, such as to (1) "respond to calls for service," (2) "enforce all applicable state and local laws, including VTA ordinances," (3) "conduct explosive ordnance detection sweeps," (4) "issue VTA parking citations," (5) "conduct investigations into criminal and security-related incidents," and (6) "act as law enforcement liaison(s) between VTA and other law enforcement agencies." The Supplemental Law Enforcement Contract also required the Sheriff's Office to "[c]ollect and provide crime reports and statistics," "[o]btain access to all online law enforcement and regulatory databases," "[c]oordinate all required law enforcement serves," provide "non-transit specific law enforcement training, and other appropriate equipment and services," and "[p]rovide special enforcement units." Finally, the contract required the Sheriff's Office to provide sworn law enforcement personnel "to support VTA's Protective Services and private security teams" by, among other things, reviewing sensitive security information, "providing relevant training to private security teams," and "providing investigative support" for reviewing CCTV footage.

Under the Supplemental Law Enforcement Contract, the VTA compensated the County for "actual [s]ervices rendered" according to a schedule of labor, overhead, and other direct costs, up to a maximum of slightly over $25 million for the base term of the contract.

## B. The VTA Shootings

The VTA shootings, the deadliest in Bay Area history, occurred around 6:30 a.m. on May 26, 2021. Samuel Cassidy, a VTA employee with a history of insubordination and verbal altercations with other employees who had previously made death threats against co-workers, entered the Guadalupe Division facility armed with three semiautomatic handguns and 32 high-capacity magazines. Cassidy began by shooting

4

during a power crew meeting in one building, and he then walked across the facility to another building where he continued firing.

At 6:33 a.m., the San Jose Fire Department received a call requesting that the department respond to the Guadalupe Division facility, albeit with no mention of an active shooter. About one minute later, Santa Clara County authorities received 911 calls reporting shots fired at the facility. Sheriff's Office deputies, who were in offices nearby, and police officers arrived at 6:35 a.m. These officers closed in on Cassidy, who, at approximately 6:43 a.m., killed himself.

## C. The Proceedings Below

### 1. The Initial Complaints

This opinion addresses four cases. In the *Davallou* case, which was filed on May 25, 2022, the estates of three victims of the VTA shootings—Alaghmandan, Hernandez, and Romo—as well as Firoozeh Davallou, Alaghmandan's widow, and eight other members of the decedents' families sued the VTA, the County, the Sheriff's Office, and Allied Barton Security Services as well as two related companies (collectively, Allied). The *Davallou* plaintiffs claimed wrongful death on the ground that negligent security allowed Cassidy to enter the Guadalupe Division facility armed with semiautomatic weapons. That same day, in the *Fritch* case, the estates of three other victims—Fritch, Megia, and Singh—and family members of eight of those victims sued the same defendants, claiming wrongful death on similar grounds. A third suit, the *Megia* case, was also brought on May 25, 2022 by the guardian ad litem of Megia's minor children, asserting a similar wrongful death claim against the same defendants as well as assault, battery, and false imprisonment against the VTA.

The fourth suit, the *Lane* case, was filed on May 26, 2022, the day after the complaints in the other cases, by the children and widow of Lars Kepler Lane against the VTA, Allied, the County, and the Sheriff's Office. Like Megia's children, the *Lane*

5

plaintiffs claimed wrongful death against all the defendants as well as assault, battery, and false imprisonment against the VTA.

### 2. *The Initial Demurrers*

The County, on behalf of itself and the Sheriff's Office, demurred to the *Davallou* and *Fritch* complaints, and in March 2023 the trial court sustained those demurrers with leave to amend. In so doing, the court reasoned that Government Code section 815[1] gives public entities immunity from direct liability unless a statute authorizes such liability. The trial court recognized that section 814 subjects public entities to liability based on contract, but noted that plaintiffs had not alleged a contract claim against the County. The trial court also recognized that public entities may be held vicariously liable for the tortious conduct of their employees. However, the court found that plaintiffs had not adequately alleged that Sheriff's Office employees voluntarily undertook any special duty to protect decedents because "there are no allegations that individual officers did anything to induce the decedents to rely on their protection in the time leading up to the shooting." Finally, the trial court ruled that the County was immune from any claim for failing to provide protection under section 845, which bars claims against both public entities and public employees for failing to provide police protection.

The trial court also considered the County's demurrer to the second amended complaint in the *Lane* case. (The *Lane* plaintiffs had filed an amended complaint before any demurrer was filed, and they filed a second amended complaint while a demurrer to their first amended complaint was pending.) Copying verbatim portions of its order in the *Davallou* and *Fritch* cases concerning wrongful death claims, in the *Lane* case the trial court sustained the demurrer with leave to amend.

---

[1] Subsequent undesignated statutory references are to the Government Code.

6

### 3. *The Amended Complaints and the Second Set of Demurrers*

In April 2023, the *Davallou* and *Fritch* plaintiffs filed amended complaints. These amended complaints added allegations that, by virtue of the Supplemental Law Enforcement Contract, the Sheriff's Office had a special relationship with the decedents as well as a claim that the contract was breached by the Sheriff's Office. Several days later the minor children of Megia filed a similar amended complaint. The *Lane* plaintiffs in turn filed a third amended complaint, also adding a claim for breach of the Supplemental Law Enforcement Contract.

The County demurred to all these pleadings, and in August 2023, in a combined order the trial court sustained the demurrers without leave to amend as to the wrongful death claims but granted leave to amend the contract claims.

In sustaining the demurrers to the wrongful death claims, the trial court once again ruled that plaintiffs had failed to state valid claims based on vicarious liability because the amended complaints still did not allege that any specific County employee took or failed to take any action that harmed decedents. The court also assumed, *arguendo*, that the amended complaints adequately alleged that the Supplemental Law Enforcement Contract created a special relationship between the County and decedents, but ruled that section 815 barred any claim against the County based on direct liability. In so doing, the trial court held section 814 inapplicable because that section authorizes " 'liability based on contract' " and plaintiffs' wrongful death claims were based in tort, not contract.

The trial court also denied plaintiffs' contract claims on the ground that plaintiffs failed to adequately allege they were third party beneficiaries of the Supplemental Law Enforcement Contract. The trial court observed that, under the Supreme Court's recent decision in *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817 (*Goonewardene*), third parties seeking to enforce a contract must show three things: (1) They are likely to benefit from the contract, (2) providing them this benefit was a motivating purpose of the contracting parties, and (3) permitting them to sue for breach of the contract is

" 'consistent with the objectives of the contract and the reasonable expectations of the contracting parties.' " (*Id.* at p. 830.)  The trial court found the third requirement unsatisfied because plaintiffs failed to sufficiently plead how allowing them to sue for breach of the Supplemental Law Enforcement Contract comports with the purpose of the contract or the parties' expectations.  Additionally, the trial court found that plaintiffs had not adequately alleged how the County breached any portion of the contract.

### 4.  The Final Amended Complaints and Demurrers

In August 2023, plaintiffs in the *Davallou*, *Fritch*, and *Megia* cases amended their complaints a second time.  The next month, the *Lane* plaintiffs amended their complaint for a fourth time.  These amended complaints expanded the allegations concerning the Supplemental Law Enforcement Contract.  In the *Davallou*, *Fritch*, and *Megia* cases, the plaintiffs also replaced the wrongful death claims against the Sheriff's Office with claims against the County.

In January 2024, in another combined order, the trial court sustained the County's demurrers against the second amended complaints in *Davallou, Fritch*, and *Megia* and the fourth amended complaint in *Lane*, this time without leave to amend.

Treating plaintiffs' wrongful death claims against the County as requests for reconsideration of its earlier dismissal of the wrongful death claims against the Sheriff's Office, the trial court deemed the requests improper because plaintiffs had not filed formal motions for reconsideration.  The trial court also rejected plaintiffs' amended contract claims on two grounds.  First, it ruled that only nine of the plaintiffs were successors-in-interest to the decedents and only these plaintiffs had standing to claim breach of the contractual duties owed decedents.  Second, the court ruled that plaintiffs still had not satisfied *Goonewardene*'s third requirement.  This time the trial court invoked *Martinez v. Socoma Companies, Inc*. (1974) 11 Cal.3d 394 (*Socoma Companies)*, which held that, with government contracts, third party beneficiary claims are not permitted unless the contract manifested an intent to permit such claims.  The trial

8

court found that the Supplemental Law Enforcement Contract contained no provision manifesting such an intent. Alternatively, the trial court found that permitting third party claims was not consistent with the objectives of the Supplemental Law Enforcement Contract and the reasonable expectations of the parties to it because, among other things, there was no allegation suggesting that the County had reason to expect that it would be subject to third party claims.

### 5. *The Judgments*

On January 29, 2024, the trial court entered judgment in all four cases in favor of the County, which it defined to include the Sheriff's Office, and notice of entry of judgment was served on February 15, 2024.

Plaintiffs subsequently filed timely notices of appeal.

## II. DISCUSSION

Plaintiffs appeal the judgments resulting from the orders sustaining the County's demurrers and dismissing their wrongful death and contract claims against the County and the Sheriff's Office. We review these orders de novo (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415), and in so doing "we treat the demurrer[s] as admitting all material facts properly pleaded" (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866), but do not assume the truth of " ' "contentions, deductions or conclusions of fact or law" ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6). As explained below, we conclude that the trial court correctly sustained the demurrers to plaintiffs' wrongful death and contract claims.

### A. Wrongful Death Claims

Plaintiffs argue that the trial court erred in holding that governmental immunity bars their wrongful death claims. We disagree for three reasons. First, the trial court correctly held that the County was immune from direct liability under section 815. Second, plaintiffs did not assert a valid claim for vicarious liability because they failed to allege any tortious conduct by any individual. Third, section 814 does not save plaintiffs'

9

wrongful death claims because that section applies to claims seeking to impose liability based on contract, not tort.

### 1. Governmental Immunity

Before analyzing plaintiffs' wrongful death claim, we briefly review the Government Claims Act (§ 810 et seq.), the statute governing the immunity of public entities and public officers.[2]  Although such immunity often produces harsh results in individual cases, the Legislature nonetheless affords significant immunity to public entities and public officers on the theory that fear of liability may deter government entities from performing their functions, and " '[f]ar more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately.' " (*Creason v. Dept. of Health Services* (1998) 18 Cal.4th 623, 637, quoting Recommendation Relating to Sovereign Immunity, No. 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law. Revision Com. Rep. (1963), p. 831.)  Accordingly, the Legislature enacted the Government Claims Act " 'to confine potential governmental liability to rigidly delineated circumstances.' " (*DiCampli-Mintz v. City of Santa Clara* (2012) 55 Cal.4th 983, 991.)

"Under the Government Claims Act, all government tort liability must be based on statute," and "in the absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable." (*County of San Bernardino v. Superior Court* (2022) 77 Cal.App.5th 1100, 1107-1108; see also *County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1045 [noting that the Government Claims Act " 'abolishes all common law or judicially declared forms of liability for public entities,

_____

[2]  Although earlier Supreme Court decisions referred to this statute as the California Tort Claims Act (see, e.g., *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127 (*Zelig*), more recently the Court has referred to the statute as the Government Claims Act.  (See, e.g., *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741-742, fn. 7.)

except for such liability as may be required by the state or federal constitution' "].)  This rule of general or presumptive immunity is contained in section 815:  "Except as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  (§ 815, subd. (a).)

The general immunity afforded by section 815 is significantly qualified by section 814.  Under that section, "[n]othing in this part"—which includes all of the Government Claims Act's immunity provisions (§§ 814-895.8)—"affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."  (§ 814.)  Thus, public entities are subject to claims "for "liability based on contract" as well as claims for non-monetary relief.  As a consequence, the general immunity created by section 815 is largely limited to tort claims seeking damages.

In addition, the general immunity against tort claims is limited to claims based on direct liability.  Under section 815.2, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  (§ 815.2, subd. (a).)  In addition, under section 820, a public employee is generally "liable for injury caused by his act omission to the same extent as a private person."  (§ 820, subd. (a).)  Thus, under the Government Claims Act, while public entities are generally immune from direct tort liability, they are subject to tort liability "through their potential vicarious liability for the negligence of their employees."  (*Zelig*, *supra*, 27 Cal.4th at p. 1132.)

This vicarious liability is in turn limited by the immunity granted public employees.  Where a public employee is immune from liability, public entities are immune from vicarious liability for that officer's actions.  (§ 815.2, subd. (b) ["Except as

11

otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."].) In addition, while public employees generally are "liable for injury caused by [their] act or omission to the same extent as a private person" (§ 820, subd. (a)), they enjoy a number of specific immunities (§§ 820.2-823). For example, public employees are generally immune from liability based on the exercise of discretion entrusted to them. (§ 820.2 ["Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused."].)

Finally, the Government Claims Act contains some immunities covering both public entities and public employees. Most pertinently here, section 845 provides immunity against claims concerning the establishment of police departments and provision of police protection services: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." (§ 845.)

### 2. *Direct Tort Liability*

The trial court ruled that the County was immune from direct tort liability in this case because no statute authorizes plaintiffs' wrongful death claims. We agree. Because section 815 grants public entities immunity against claims for injury "except as otherwise provided" in the Government Claims Act, "direct tort liability of public entities *must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care*, and not on the general tort provisions of Civil Code section 1714." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183, italics added; see also *Zelig*, *supra*, 27 Cal.4th at p. 1131 ["a public entity may be liable for injury directly as a result of its own conduct or omission . . . *only 'as . . . provided by statute.' "].) Plaintiffs have not pointed to any statute imposing direct tort liability on

12

public entities for either wrongful death or common law negligence. Nor are we aware of any. Accordingly, under section 815 the County and the Sheriff's Office are immune from direct tort liability for plaintiffs' wrongful death claims, which in turn are based on negligence.

At one point in their briefs, plaintiffs appear to suggest that, far from being generally immune from direct tort liability, public entities are generally subject to such liability. Specifically, relying on *Arista v. County of Riverside* (2018) 29 Cal.App.5th 1051 (*Arista*), plaintiffs state that " ' "a public entity is liable for [an] injury caused by his act or omission as a private person," except as specifically provided by statute.' " *Arista* did not say that. Instead, in the passage invoked and partially misquoted by plaintiffs, *Arista* described section 820's general rule concerning public employees: " ' "[A] public *employee* is liable for [an] injury caused by his or her act or omission to the same extent as a private person," except as otherwise provided by statute.' " (*Arista*, *supra*, at p. 1060, italics added; see also § 820, subd. (a) ["Except as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person."].)

Plaintiffs also assert that *Arista* and two other cases, *Carpenter v. City of Los Angeles* (1991) 230 Cal.App.3d 923 (*Carpenter*) and *Morgan v. City of Yuba* (1964) 230 Cal.App.2d 938 (*Morgan*), rejected an immunity defense under section 815, because the sheriff in each of those cases promised to protect a particular individual. In fact, none of these cases mentioned section 815. Moreover, contrary to plaintiffs' assertion, *Arista* did not find the county in that case subject to direct liability because the sheriff's department in that case "voluntarily assume[d] a protective duty toward a certain member of the public." (*Arista*, *supra*, 29 Cal.App.5th at p. 1061.) Instead, after noting that the Government Claims Act imposes vicarious liability upon public entities (*ibid.*), *Arista* held the County of Riverside subject to such liability because "Sheriff's Department *personnel* (*the deputies*)*, through their actions, undertook the responsibility of rescuing

13

the victim." (*Ibid.*, italics added; see also *id*. at p. 1060 [noting allegation that department personnel were working within the scope of their employment].) *Morgan* similarly held the County of Riverside subject to vicarious liability under section 815.2. (*Morgan*, *supra*, at pp. 942-943.) And while *Carpenter* did not expressly mention vicarious liability, it held the City of Los Angeles subject to liability based on assurances given by a police detective. (*Carpenter*, *supra*, at pp. 931-932; see also *id*. at p. 927 [describing alleged assurance].) Thus, none of the cases cited by plaintiffs suggest that the County is subject to direct tort liability here.

We therefore conclude that the County and the Sheriff's Office are immune from direct liability for plaintiffs' wrongful death claims under section 815.

### 3. *Vicarious Liability*

Plaintiffs also argue that the County is vicariously liable in connection with their wrongful death claims. As the trial court recognized, this argument fails because plaintiffs did not plead a prerequisite to vicarious liability: an act or omission by an employee.

As noted above, section 815.2 authorizes vicarious liability for public entities. It states that a public entity may be held liable for acts or omissions of "an employee of the public entity within the scope of his employment": "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against the employee or his personal representative."[3] (§ 815.2, subd. (a).)

Section 815.2 does not apply here because plaintiffs have not alleged any action or inaction by the sheriff, the sheriff's deputies, or any other individuals that led to the tragic

---

[3]  In what presumably was a clerical error, in their opening brief plaintiffs omit section 815.2's first reference to employee in quoting the section. Plaintiffs make a similar, also presumably clerical, error in their reply brief in quoting section 820.

shootings on May 26, 2021. Vicarious liability for an employee's actions "attaches if and when it is adjudged that the employee was negligent as well." (*Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1113 (*Munoz*), disapproved on other grounds in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, fn. 1.) Consequently "in order for vicarious public entity liability to attach, a public employee, either named as a defendant or at least 'specifically identified' by the plaintiff, must have engaged in an act or omission giving rise to that employee's tort liability." (*Koussaya v. City of Stockton* (2020) 54 Cal.App.5th 909, 945; see also *Munoz*, *supra*, at p. 1113 ["[U]nless the employee is identified, the trier of fact will not be able to determine if the elements needed to assert vicarious liability have been proved."].) Although the trial court pointed out the absence of any allegations concerning the actions or inactions of individual officers in initially sustaining the County's demurrers, plaintiffs' subsequent pleadings failed to allege any action or inaction by individual officers or employees.

In their wrongful death claim against the Sheriff's Office, the *Lane* plaintiffs did allege that the Sheriff's Office is liable "for the negligent acts of their employees in the course and scope of their employment." However, they failed to allege what those negligent acts were. Additionally, in their third (but not their fourth) amended complaint, the *Lane* plaintiffs alleged that the Supplemental Law Enforcement Contract was breached by, among other things, failing to use metal detectors and other security measures, but they attributed these failures to "Defendants," not to any individual employees or specific actions. Plaintiffs contend that some individual must have been involved and responsible for the alleged failures. While that is true, claims under the Government Claims Act " 'must be pleaded with particularity.' " (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) Such particularity is needed in part to ensure that public entities and officers can determine whether alleged actions are protected by specific grants of immunity—a consideration that is especially relevant here because the Supreme Court has held that the decision whether to install metal detectors in

15

a building concerns police protection and is protected by section 845's immunity for decisions whether to provide police protection services. (*Zelig*, *supra,* 27 Cal.4th at p. 1130.).

The remaining plaintiffs argue the County may be held vicariously liable under section 815.2 based on the actions of the Sheriff's Office. This argument turns section 815.2 on its head. Under that section, "[a] public *entity*" may be held vicariously liable for injuries caused by the actions or inactions "of an *employee* of the public entity." (§ 815.2, subd. (a), italics added.) However, an employee is normally an individual, and the Sheriff's Office is a "public entity." (*Streit v. County of Los Angeles* (9th Cir. 2001) 236 F.3d 552, 565-566 [construing section 811.2]). Moreover, at oral argument, far from explaining how a public entity such as the Sheriff's Office falls within any plausible definition of the term employee, plaintiffs asserted that the Sheriff's Office is an employee because it is an agent of the County. That is wrong. Not all agents are employees. (See, e.g., Rest.3d Agency, § 1.01, cmt. g ["The common law of agency encompasses employment as well as nonemployment relations."].) And, far from deeming all agents employees under the Government Claims Act, the Legislature expressly decided *not* to include agents within the Act's definition of employee in section 810.2. (Sen Com. on Judiciary, Analysis of Sen. Bill No. 42 (1962-1963 Reg. Sess.) 2 Sen. J. (1962-1963 Reg. Sess.) p. 1885 [" 'Employee' was originally defined (in the bill as introduced) to include 'an officer, agent, or employee,' " but "[b]y amendment, the word 'servant' was substituted for 'agent' because . . . public entities feared that to impose liability upon public entities for the torts of 'agents' would expand vicarious liability to include a large, indefinite class of persons . . . .' "].) We therefore conclude that that plaintiffs have failed to allege any vicarious tort liability. As a consequence, we need not consider whether the County, the Sheriff's Office, or any employees of either entity had a special relationship with the decedents or whether section 845's immunity for police protection services bars plaintiffs' claims.

16

### 4. *Section 814*

Plaintiffs also argue that section 814 authorizes their wrongful death claims because those claims seek to enforce a duty that exists only because of the Supplemental Law Enforcement Contract and therefore "arise[] from contract." (Italics omitted.) We disagree. Section 814 states that "[n]othing in this part affects *liability based on contract* or the right to obtain relief other than money or damages against a public entity or public employee." (§ 814, italics added.) Plaintiffs' wrongful death claims do not seek to impose "liability based on contract." Indeed, one of the elements of a wrongful death claim is the commission of a tort. (See, e.g., *Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968 [" ' "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages . . . ." ' "].) Accordingly, plaintiffs' wrongful death claims are based on tort, not contract, law.

Plaintiffs argue that section 814 applies not only to suits for breach of contract, but also "to *any* suit that is 'based on' a contract." However, section 814 does not refer to "suit[s] based on a contract." It refers to "*liability* based on *contract*"—that is, contractual liability. (§ 814, italics added.) Thus, section 814 does not permit tort claims against public entities merely because those claims have some factual connection to a contract. It permits only claims that seek to impose liability based on contract law.

Plaintiffs fail to cite any case holding that section 814 applies to a tort claim merely because the claim has some factual connection to a contract. They do cite the Supreme Court's decisions in *Souza v. McCue Construction Co. v. Superior Court* (1962) 57 Cal.2d 508 (*Souza*) and *E. H. Morrill Co. v State* (1967) 65 Cal.2d 787 (*Morrill*). However, while there were allegations of misrepresentation in those cases, there were no tort claims. To the contrary, the plaintiff in *Souza* asserted a *contract* claim based on an alleged misrepresentation concerning soil conditions that led him to make an unduly low bid for a municipal construction contract. (*Souza*, *supra*, at p. 509.) The Supreme Court held that governmental immunity against tort claims did not bar this claim because the

17

"furnishing of misleading plans and specifications by the public body constitutes a breach of an implied warranty" (*id.* at pp. 510-511), and "[a] contractor of public works . . . may recover in a *contract* action for extra work or expenses necessitated by the conditions being other than as represented" (*id*. at p. 510, italics added). In other words, far from permitting a tort claim because of its connection to a contract, *Souza* permitted a contract claim despite its connection to tortious conduct. Similarly, *Morrill* upheld a contract claim based on alleged misrepresentations concerning subsurface conditions, not a tort claim connected to a contract. (*Morrill*, *supra*, at pp. 793-794.)

It is true that *Souza* applied the statute of limitations for fraud to the breach of implied warranty claim in that case. (See *Souza*, *supra*, 57 Cal.2d at p. 511.) But plaintiffs fail to explain why we should follow *Souza*'s interpretation of the statute of limitations in applying section 814 rather than *Souza*'s application of government immunity principles. (*Id*. at pp. 510-511.)

We therefore conclude that section 814 does not authorize plaintiffs' wrongful death claims and that the general immunity granted public entities under section 815 bars those claims against the County and the Sheriff's Office.

## B. Breach of Contract

In addition to suing for wrongful death, plaintiffs sued the County for breach of the Supplemental Law Enforcement Contract. The trial court denied these contract claims because plaintiffs failed to show that their decedents were third party beneficiaries entitled to enforce the contract.[4] Relying largely on cases from other jurisdictions, plaintiffs challenge this ruling. Conducting an independent review (see, e.g., *The H.N. &*

---

[4] The trial court also ruled that most of the plaintiffs lack standing to assert contract claims because a decedent's contract claims pass to the decedent's successor in interest (see Code Civ. Proc., § 377.30), and only eight of the plaintiffs were successors interest. As plaintiffs' opening brief did not challenge this ruling, we deem any challenge to that ruling forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 [" 'We will not ordinarily consider issues raised for the first time in a reply brief.' "].)

*Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 45), we conclude that the ruling was correct.

As the trial court recognized in *Goonewardene*, *supra*, 6 Cal.5th 817, the Supreme Court recently reformulated the test for identifying third party beneficiaries. Specifically, it instructed courts to examine the contract in question "to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Id*. at p. 830.) The Supreme Court further stated that a third party beneficiary claim may proceed only if all three of these elements are satisfied. (*Ibid*).

In explaining the third element of this test—whether third party beneficiary claims are "consistent with the objectives of the contract and the reasonable expectations of the contracting parties"—the Supreme Court relied on *Socoma Companies*, *supra*, 11 Cal.3d 394, which the court described as one of its "two most prominent third party beneficiary decisions." (*Goonewardene*, *supra*, 6 Cal.5th at p. 831.) Much like this case, *Socoma Companies* involved government contracts. (*Socoma Companies*, *supra*, 11 Cal.3d at p. 398.) Relying on the Restatement of Contracts, *Socoma Companies* held that, where government contracts are at issue, intent to confer upon a third party a right to enforce the contracts "cannot be inferred simply from the fact that the third person was intended to enjoy the benefits." (*Id.* at p. 401.) Indeed*, Socoma Companies* denied the third party beneficiary claim in that case because the government contracts at issue "manifest[ed] no intent that the defendants pay damages to compensate plaintiffs or other members of the public for their nonperformance." (*Socoma Companies*, *supra*, at p. 402.) Subsequent Court of Appeal decisions involving government contracts similarly have denied third party beneficiary claims for lack of any "manifest intent" to permit such claims. (*Lake*

*Almanor Associates L.P. v. Huffman-Broadway Group, Inc*. (2009) 178 Cal.App.4th 1194, 1199-1202 [relying on *Socoma Companies* and the Restatement (Second) of Contracts, in determining that the plaintiff was not an intended beneficiary because the terms of the contract in question "are insufficient to demonstrate an intent that respondent be liable to appellant in the event of breach"]; *Dateline Builders, Inc. v. City of Santa Rosa* (1983) 146 Cal.App.3d 520, 527 [relying on *Socoma Companies* and the Restatement of Contracts in rejecting third party beneficiary claim on ground that the contract in question "manifests no intent that the City pay damages to compensate Builders or other members of the public for nonperformance"]; *New Hampshire Ins. Co. v. City of Madera* (1983) 144 Cal.App.3d 298, 307-308 [relying on *Socoma Companies* and the Restatement of Contracts in holding that intent to permit third party beneficiary claim may not be inferred "from the mere fact that the contract confers a benefit upon appellant"].)

The *Lane* plaintiffs contend that the Supreme Court implicitly overruled *Socoma Companies*' holding concerning government contracts because of another aspect of the decision. In concluding that the government contracts at issue did not manifest an intent to permit third party beneficiary claims, *Socoma Companies* reasoned that third party beneficiary claims were inconsistent with the contracts because the contracts provided an administrative process for dealing with alleged breaches and contained liquidated damages provisions limiting potential liability under the contracts. (*Socoma Companies*, *supra*, 11 Cal.3d at pp. 402-403.) As the *Lane* plaintiffs point out, in *Goonewardene* the Supreme Court emphasized this reasoning. (*Goonewardene, supra,* 6 Cal.5th at p. 832.) In addition, as the *Lane* plaintiffs also point out, in *Goonewardene* the Supreme Court noted that its prior decisions "have not required a showing that the contracting parties actually considered the third party enforcement question as a prerequisite to the applicability of the third party beneficiary doctrine." (*Id*. at p. 830.) Based on these statements, the *Lane* plaintiffs assert that the test announced in *Goonewardene* is "a direct

20

synthesis" of its earlier case that implicitly rejects the manifest intent requirement for government contracts in *Socoma Companies* and the Restatement.

We are not persuaded. Nothing in *Goonewardene* suggests that the Supreme Court was in part rejecting *Socoma Companies*. To the contrary, *Goonewardene* endorsed *Socoma Companies* as one of the court's most prominent third party beneficiary decisions (*Goonewardene*, *supra*, 6 Cal.5th at p. 831) and described *Socoma Companies*' reasoning without suggesting a reservation about other aspects of the decision (*id*. at p. 832). Nor did *Goonewardene* have any reason to consider the rule that *Socoma Companies* adopted for government contracts. *Goonewardene* considered a contract between two private parties for payroll services rather than a government contract (*id*. at p. 820), and " 'it is axiomatic that cases are not authority for propositions not considered' " (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160).

In addition to arguing that *Socoma Companies* has been implicitly overruled, plaintiffs assert that third party beneficiary claims are consistent with the objectives of the Supplemental Law Enforcement Contract because "the County already faces vicarious tort liability under the special relationship doctrine" and "[a]llowing Plaintiffs to sue the County is the only way to ensure that they receive full compensation." Neither argument is persuasive.

First, the County does not face vicarious tort liability in this case. As concluded above, plaintiffs have failed to state valid claims for vicarious tort liability because they have not alleged any action or inaction by individual officers. In addition, even if plaintiffs had made such allegations, it is unclear that any claim for vicarious liability could be asserted in connection with the Supplemental Law Enforcement Contract. As the Supreme Court has observed, "police officers and other public security officers, like other persons, generally may not be held liable in damages for failing to take affirmative steps to come to the aid of, or prevent an injury to, another person." (*Zelig*, *supra*, 27 Cal.4th at p. 1128; see also *Golick v. State of California* (2022) 82 Cal.App.5th 1127,

21

1149 ["Cases finding a special relationship based on the performance of police duties are rare and involve situations in which the victim detrimentally relied on some conduct or representation by the officer."].)

Second, plaintiffs' limited ability to recover compensation from the VTA does not require that third party beneficiary claims be permitted where, as here, a government contract is involved. Under the Restatement, a third party member of the public is permitted to seek damages under a government contract, not where the member of the public's ability to recover compensation is limited, but where "the promisee is subject to liability to the member of the public for the damages" and a direct action is consistent with the contract and relevant legal policies. (Rest.2d Contracts, § 313(2)(b).) Indeed, where, as here, a government promisor (the County) is immune from tort liability and the liability of the promisee (VTA) is limited, permitting third party claims under the contract would increase the promissor's potential lability and add unexpected costs to the contract—thereby upsetting the reasonable expectations of the parties in violation of *Goonewardene*'s last requirement for third party beneficiary status. (*Goonewardene*, *supra*, 6 Cal.5th at p. 830.)

Plaintiffs cite several cases from other jurisdictions ruling that employees and tenants may sue as third party beneficiaries of security contracts. These cases are distinguishable. Although three of these cases involved government contracts to provide security (see *Stickle v. City-Wide Security Services, Inc.* (S.D.N.Y. 1993) 839 F.Supp. 207, 210 (*Stickle*) [contract with Port Authority of New York]; *Locke v. Ozark City Board of Education* (Ala. 2005) 910 So.2d 1247, 1249-1250 (*Locke*) [presumed contract between board of education and high school athletic association]; *Wooldridge v. Echelon Service Co.* (Va.Cir.Ct. 1988) 13 Va. Cir. 323, 325 (*Wooldridge*) [contract with federal government]), none of these cases applied the Restatement of Contracts or any rule requiring a manifest intent to pay damages to third parties. Indeed, the cases did not even require that third party suits be consistent with the objectives of the contract at issue or

22

the reasonable expectations of the contracting parties, as *Goonewardene* requires. They merely required that the parties "intended to confer a direct benefit" on a third party. (*Stickle*, *supra*, at p. 210; see also *Locke*, *supra*, at p. 1250 [requiring that the " ' " 'the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party' " ' "]); *Wooldridge*, *supra*, 13 Va. Cir. at p. 325 ["A clear and definite intent to benefit the plaintiff is required to confer standing to bring a third party beneficiary action."].) The other two cases cited by plaintiffs involved private contracts to provide security, and they similarly analyzed only whether the contract "was intended for the benefit of the third party" (*FPI Atlanta, L.P. v. Seaton* (Ga.Ct.App. 1999) 524 S.E.2d 524, 531) or " 'intended to confer a direct benefit on the alleged third party beneficiary' " (*Kotchina v. Luna Park Housing Corp.* (N.Y.App.Div. 2006) 815 N.Y.S.2d 594, 594). Thus, none of the cases cited by plaintiffs suggest that third party beneficiary claims are permitted here under the standard applied in California.

We therefore conclude that plaintiffs have failed to show that they are entitled to bring third party beneficiary claims under *Goonewardene* and *Socoma Companies*. In light of this conclusion, we need not reach the County's argument that the economic loss rule bars plaintiffs' contract claims.

### C. Leave to Amend

Finally, plaintiffs contend the trial court abused its discretion in denying them leave to amend their complaints for a third (or, in the case of the *Lane* plaintiffs, a fifth) time. Although " ' " 'great liberality should be exercised in permitting a plaintiff to amend his complaint' " ' " (*City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1091), plaintiffs bear the burden of proving that there is a reasonable possibility that amendments may cure the defects in their claims. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Plaintiffs have not satisfied that burden. They argue that they should have been granted leave to amend their wrongful death claims to allege additional facts showing that "the Sheriff through its employees had a special

23

relationship with plaintiff's decedents that created a duty by the Sheriff to protect plaintiffs' decedents." However, as shown above, plaintiffs' wrongful death claims fail whether or not there was a special relationship because the County and the Sheriff's Office are immune from direct tort liability and plaintiffs have failed to allege vicarious liability. We therefore conclude that the trial court did not abuse its discretion in refusing to grant plaintiffs leave to amend their complaints another time.

We recognize that this conclusion prevents plaintiffs from seeking compensation against the County and the Sheriff's Office without any consideration whether deficient conduct by the County or the Sheriff's Office led to the tragedy that plaintiffs have experienced and the grievous loss that they have suffered. However, this result is compelled by the immunity that the Legislature has afforded public entities, and the limits on government contracts recognized by the Supreme Court. As a consequence, plaintiffs must seek compensation for their injuries from other parties.

### III.    DISPOSITION

In Case Nos. H051963, H051964, H051972, and H052003, the judgments entered upon the orders of dismissal are affirmed.

24

_____
BROMBERG, J.

WE CONCUR:

_____
DANNER, ACTING P. J.

_____
LIE, J.

*Davallou et al. v. County of Santa Clara*
H051963
*Fritch et al. v. County of Santa Clara*
H051964
*G.M. et al. v. County of Santa Clara*
H059172
*Lane et al. v. County of Santa Clara through the Office of the Sheriff*
H052003